STONE (CLAYTON v.). See Case No. 2,872.

STONE (EVERETT v.). See Case No. 4,577.

STONE (HARD v.). See Case No. 6,046.

## Case No. 13,483.

### STONE et al. v. KETLAND.

[1 Wash. C. C. 142.] [1]

Circuit Court, D. Pennsylvania. Oct. Term, 1804.

COLLISION—CUSTOM OF SPEAKING—HOISTED COLOURS—LIABILITY OF OWNER—INEVITABLE ACCIDENT.

1. A master of a vessel, who at sea bears down on another vessel to leeward, which has hoisted her colours, is justified in bearing down upon her, if it is a custom to do so.

2. The master of a vessel is bound to his owners, and he and they to every one who may be affected by his acts, for his skill and care in the management of the vessel under his command.

[Cited in Carsley v. White, 21 Pick. 256.]

3. If from want of care or skill he injures another vessel, the owner of the vessel under his command is answerable.

[Cited in The Mulhouse, Case No. 9,910.]

[Cited in Northrop v. Hale, 73 Me. 70; Thompson v. Hermann, 47 Wis. 610, 3 N. W. 583.]

[4. Cited in McCoy v. Lemon, 11 Rich. Law, 165, to the point that where there is no law regulating the assessment of damages, and the amount does not depend on computation, the judgment of the jury, and not the opinion of the court, is to govern.]

The case was, that the Washington, the property of defendant, in her passage from Batavia to Philadelphia, observing a schooner, the property of the plaintiff, on her outward passage, and with colours flying, bore down upon her, supposing she wished to speak her. Upon approaching her, the wind variable and dying away, it was found she would not obey her helm, which was put in the proper situation to avoid running against the schooner. Finding that this was now inevitable, the captain ordered the helm to be changed, and the sails put aback, to deaden her way, and diminish the shock. The consequence however was, that the schooner was upset and sunk. This action was for damages. The defence was, that the Washington was justified in bearing down upon the schooner, it being the acknowledged and universal understanding at sea, that if a vessel to leeward hoists her colours, it is always understood by a vessel to windward, that she wishes to speak her; and this custom was clearly proved by many respectable sea captains. That the Washington, in bearing down on the schooner, with this view, was managed in a manner which the most skilful and attentive commander could have done. There was contradictory evidence upon this point, both as to facts and opinions. The defendant also relied upon the repeated acknowledgment of the captain of the schooner, that the accident was inevitable, and that no blame attached to Captain Williamson, the commander of the Washington.

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States. under the supervision of Richard Peters, Jr., Esq.]

WASHINGTON, Circuit Justice (charging jury), laid down the rule, that a man who undertook to navigate a ship, was pledged to his owners, and he and they to all the world who might be affected, for his skill, care, and attention. That it was not sufficient for him to say he had exercised his best judgment; but in case any person sustained an injury from him, he was bound to show that he possessed and had exercised the judgment of a skilful and careful commander. That the signal, as understood at sea, was a justification for the Washington, in departing from her course, and bearing down to the schooner, if, in the opinion of the jury, the custom was sufficiently proved. That it was for the jury to say, whether, in doing so, the captain had conducted himself with skill and care; whether he manœuvred as he ought to have done, and in due time; if not, the defendants were liable. That the acknowledgments of the captain, were to be considered as evidence corroborating the opinions of the defendant's witnesses, that Captain Williamson had acted properly, and that the accident was inevitable, and nothing farther.

Jury found for the defendant.