## Case No. 10,677.

### The PALLEDO.

[3 Ware, 321.] [1]

District Court, D. Maine. July, 1865.

SEAMEN—WAGES — DISOBEDIENCE — MEANS USED BY MASTER TO OVERCOME SAME.

1. The disobedience of a seaman is a very serious fault, and if persevered in is a forfeiture of all claims for wages.

2. If the master attempts to overcome the refusal of duty, he must be careful what means he employs. But the general conduct and behavior of the seamen may be fully inquired into.

[Cited in Thompson v. Herman, 47 Wis. 607, 3 N. W. 581.]

In admiralty.

Mr. Smith, for libellant.
Mr. Clifford, for respondent.

WARE, District Judge. In December last, the libellant shipped on board the Palledo, for a voyage from Portland to Matanzas and back to her port of discharge in the United States, and sailed on the 20th of that month. While on the outward voyage, on the 25th, at 4 o'clock p. m., when he was relieved from the wheel, he was ordered by the master to coil a hawser, which lay in the boat, to which order the libellant replied, "that he thought he had been long enough on the deck, and that it was his watch below; that he had been on deck nearly all the night before, and every night before since he left Portland." Capt. Marwick, and the mate, Leland, then seized him and threw him down on some lumber, and the master struck him two or three blows with his fist, and then ordered the mate to go to his cabin and bring a pistol, and ordered the mate several times to shoot him. Leland pointed the pistol at his abdomen, being three or four yards distant from him, and snapped it, but the cap only exploded without communicating fire to the charge. The master then ordered the mate to go to the cabin for another pistol, and while he was gone, he, the libellant, got into the rigging. The libellant then came down and took an axe, and told the master that if the pistol missed fire he would not miss his mark. That previous to this time he had offered no resistance and no disobedience to the master's orders. The answer admits the order, but adds that the libellant utterly refused to obey it, with profane and insulting language, saying he would be damned if he did, and all the officers on board could not compel him to obey; that he then ordered the mate to go to the cabin for a pistol, but that it was known to him and all the officers that the pistol was not loaded, and that he ordered it merely for the sake of intimidating the man, and did not intend any personal injury, and he denied throwing him down or inflicting any blow.

The libel is brought to redress this injury, and a number of witnesses have been examined on one side and the other. In his answer, the master says, that to his knowledge, and that of all the officers, the pistol was not loaded, and brought up only for the purpose of intimidation, and this is, I think, satisfactorily supported by the evidence. I think the master had a right to do this, but it was certainly full of hazard, for if a pistol was used on this occasion, the natural presumption would be that it was loaded. It is only on clear and satisfactory proof that the contrary would be admitted. When McCarty was ordered to coil the hawser, at the time when he was relieved from the wheel, it is clear from all the evidence that he refused. He does not deny it himself, but says he did it in a respectful manner, and with the excuse that he had been at work all the day, and most of the previous night, on deck, and this is partially supported by other evidence; on the other hand, it is testified that he answered in profane and disrespectful language, that he would be damned if he did, and all the officers could not make him. During the outward voyage they had rough weather, and all hands were pretty constantly at work, but it does not appear that McCarty was called on more than others, and that there was no peculiar hostility to him, that he was put to no harder service, or received worse treatment than the rest of the crew. A deliberate refusal to do duty has always been considered as one of the highest offences by the maritime law. If persevered in it puts an end to all authority and order on board of the vessel, and not only puts at hazard the ship, but the safety and lives of all on board. The power to command must reside somewhere, and the law has placed it in the master. He may exercise it properly, or harshly, and unjustly, and for this he is answerable, when he returns to port. But except in very peculiar cases, he must, at the time, be obeyed, and to enforce his orders the law gives him authority to use force. In exercise of this, regard must be had to the occasion and to the circumstances of it, and especially to the character and conduct of the seamen. Evidence on this subject has been pretty largely gone into, and without going over it in detail, the result is by no means favorable to the libellant. On the contrary, the balance, by a strong preponderance, is, that he was an uncomfortable and troublesome man; that he was, if not a practiced pugilist, not unwilling to try himself in that way; that he had great confidence in his strength and skill; and that his manners and carriage were such as might be expected from such a person. All this was well known to the master, and was proved at the trial. If he was thrown down, the injury was not severe, and no permanent damage resulted. On the whole, my opinion is that

---

[1] [Reported by Geo. F. Emery, Esq.]

the master acted with such moderation that he ought not to be answerable in damages.

The libel is dismissed, but without cost to either party.