THOMPSON vs. HERMANN and others.

MASTER AND SERVANT. *Liability of owners and master of ship for injuries to seaman, from negligence, etc.*

1. It is a general rule, applicable to all kinds of service, that a master who negligently fails to furnish his servant with safe machinery, means and appliances for doing the work required to be done, is liable for injuries to the servant caused by such negligence.

2. The common seaman in a vessel at sea is bound to submit to the judgment and discretion of the master, and obey his orders, in the management of the vessel and its repairs, especially in rough weather and cases of emergency; and the fact that the seaman, on receiving from the master an order otherwise lawful, and being imperatively commanded to perform it in a manner or by means which he regards as unnecessarily dangerous, does not refuse to so perform it, or undertake then and there to withdraw from the service, will not prevent his recovering for personal injuries caused by the master's fault.

3. The owners of a vessel, as well as the master, are liable for injuries caused by the negligence or unskilfulness of the master, provided the act be done within the scope of his authority as such.

APPEAL from the County Court of *Milwaukee* County.

The averments of the complaint, as amended, are thus stated by Mr. Justice ORTON:

"The complaint charges, in effect, that the defendants are the owners, and one of them master, and the plaintiff a seaman, of the vessel "Surprise," sailing on Lake Erie, between the ports of Ashtabula and Erie; that while a heavy sea was running, and the vessel was pitching and rolling heavily, the jaw rope of the main gaff parted, and the gaff was unshipped, launched forward in front of the main mast, and swung over into the main rigging, and that the plaintiff, with other seamen, was ordered by the master to adjust the gaff, by standing upon the lower boom, and pulling upon the bow-line fastened to one of the horns of the jaw of the gaff, and which was very likely and apt to slip from said horn, which was very smooth, worn and slippery, and cause plaintiff to fall from said boom to the deck below, and be thereby injured, all of which was well known to the master; that the plaintiff, thinking it unsafe and dangerous to obey such order, objected and protested against the same, and informed the master, and insisted, that the main gaff could as well be adjusted by means of tackle then and there near at hand, and with safety to all concerned; but that the master refused to adopt such precautionary means, and imperatively ordered the work to be done in the danger-

ous way above stated; and that, in the careful discharge of his duty in obedience to such order, the plaintiff fell from said boom, and was injured, by reason of the slipping of the bow-line; and that the master was grossly negligent in not provid-ing, adopting and using the safe and proper means and appli-ances for such work, and in ordering and directing it to be done in the dangerous manner above stated."

A demurrer to the complaint, as not stating a cause of action, was sustained; and plaintiff appealed from the order.

For the appellant, there was a brief by *Markhams & Smith*, and oral argument by *E. P. Smith:*

1. To the point that a master who by any act or omission unnecessarily enhances the usual risks of the employment, is liable for injuries thereby resulting to the servant, counsel cited Wood's M. & S., §§ 345, 348; 4 Wait's Act. & Def., 417; *Coombs v. New Bedf. Cord. Co.*, 102 Mass., 572; *C. & N. W. R'y Co. v. Jackson*, 55 Ill., 492; *Columbus & Ind. R'y Co. v. Arnold*, 31 Ind., 175; *Keegan v. Kavanaugh*, 62 Mo., 230; *Strahlendorf v. Rosenthal*, 30 Wis., 674; *Smith v. Rail-way Co.*, 42 id., 525–6; *Wedgwood v. Railway Co.*, 44 id., 44; *Bessex v. Railway Co.*, 45 id., 477. 2. To the point that plaintiff's act in obeying the order, instead of refusing to do so and renouncing the employment, would not prevent a recov-ery, they cited Cooley on Torts, 555–6, 559–60; Smith's M. & S., 121; 4 Wait's Act. & Def., 401; Curtis's Rights & Dut. of Mer. Seamen, 33, 93, 134; Desty's Ship. & Adm., § 180; Dixon on Ship., 79; Wood's M. & S., § 387; Abbott on Ship., 173; *Collins v. Evans*, 5 Q. B., 830; *Atkins v. Johnson*, 43 Vt., 78; *Paterson v. Wallace*, 1 Macq., 748; *S. C.*, 28 Eng. Law & Eq., 48; *Patterson v. Railroad Co.*, 76 Pa. St., 389; *Indermaur v. Dames*, L. R., 1 C. P., 274; *C. & N. W. Rail-way Co. v. Bayfield*, 37 Mich., 211; *Grizzle v. Frost*, 3 F. & F., 622; *Coombs v. N. B. Cord. Co., supra; Bartonshill Coal Co. v. McGuire*, 3 Macq., 300; *Fort v. Railroad Co.*, 2 Dill., 259; *S. C.*, 17 Wall., 553; *Fuller v. Colby*, 3 Woodb. &

Min., 7; *Harden v. Gordon*, 2 Mason, 541; *Johnston v. Barque Cyane*, 1 Sawyer, 153; *Ulary v. Washington*, Crabbe, 204; *Butler v. McLellan*, 1 Ware, 220; *Schultz v. Railway Co.*, 44 Wis., 638. Mere knowledge of the danger on plaintiff's part is not conclusive of contributory negligence; but that question, under the circumstances, was for . the jury. *Kelly v. Fond du Lac*, 31 Wis., 179; *Kenworthy v. Ironton*, 41 id., 647; Wood's M. & S., § 377.

For the respondent, there was a brief by *Ludwig & Somers*, and oral argument by *Mr. Somers:*

1. A servant cannot recover unless the employer knew or ought to have known of the defect which caused the injury, and the employee did not know of it or had not equal means of knowledge. *Malone v. Hawley*, 46 Cal., 409; *McGlynn v. Brodie*, 31 id., 376; *Baltimore, etc., Railroad Co. v. Woodward*, 41 Md., 268; 4 Wait's Act. & Def., 417–18; Cooley on Torts, 555; 2 Hilliard on Torts, 467. One who places himself unnecessarily in a position of known danger, cannot recover against the person whose negligence caused the danger. *Goldstein v. Railway Co.*, 46 Wis., 404; 1 Add. on Torts, 489, and cases there cited. 2. Plaintiff attributes the injury to the *manner* in which the work was to be done. It is well settled that an employer has a right to judge for himself *how* he will have his work done (not violating the law of the land); and workmen, with knowledge of the circumstances, must judge for themselves whether they will do the work required in that manner. . Cooley on Torts, 552; 2 Hilliard on Torts, 468. Even if a safer mode of doing some particular work is discarded by the master's orders, the servant cannot maintain an action for injuries sustained. *Dynen v. Leach*, 40 Eng. L. & E., 491. A servant may decline any service in which he reasonably apprehends injury to himself *(Paterson v. Wallace*, 1 Macq., 748; *Buzzel v. Manuf'g Co.*, 48 Me., 113; 1 Add. on Torts, 488); and, being unfettered by any consideration but his own interests, if he incurs hazards which prove

injurious, he cannot in law complain. *Moss v. Johnson*, 22 Ill., 633.

ORTON, J. We think the amended complaint in this action states a cause of action, and that the demurrer should have been overruled.

It is objected by the learned counsel of respondent, that the facts stated show that the service necessarily required by the employment was dangerous, and that the plaintiff, by entering upon it, took the risks and hazards upon himself, and that he was not bound to obey orders requiring such service, and might have declined the service, and abandoned the employment, and was negligent in not so doing.

We think that the peculiar character of the employment, and the relations existing between the master and the common seaman of a merchant vessel outside of port, remove this case from these objections and the authorities cited to sustain them; and that, although they might be correct legal propositions in respect to other kinds of employment, they have scarcely any application here. There would seem to be, however, one principle, applicable to all kinds of service, upon which this complaint might be sustained, irrespective of the peculiar character of this employment and the relations of the parties; and that is, that the master is bound to furnish safe machinery, means and appliances for the work required to be done, and that carelessness or negligence in these respects alone may be legal ground for recovery. *Smith v. The C., M. & St. P. R'y Co.*, 42 Wis., 525; *Wedgwood v. The C. & N. W. R'y Co.*, 44 Wis., 44, and many other cases in this court. But, aside from this principle, the master occupies such a position of authority on board of his vessel at sea, and the common seaman such a position of subordination, that the seaman is bound to submit to the will, judgment and discretion of the master, and obey his orders in the management of the vessel or for its repair, and especially in rough weather and in cases of emergency;

and any other principle would work insubordination and the destruction of all authority and discipline on board the vessel.

If each seaman, when ordered to perform any work or duty in the management or repair of the vessel, were allowed by law to exercise his own free will, discretion and judgment in all cases of danger, and obey the master or refuse obedience at his pleasure, such a right would directly lead to general mutiny, and be fraught with great danger and peril, not only to the one so insubordinate, but to all on board, and to the ship and cargo as well. The language of the books is, that "disobedience or misconduct of the sailor is of necessity punishable with great severity, because discipline must be preserved, and without it the ship would always be in great peril." 1 Parsons on Maritime Law, 463. "By the common law, the master has authority over all the mariners on board the ship, and it is their duty to obey his commands in all lawful matters relating to the management of the ship and the preservation of good order, and such obedience they expressly promise to yield to him by the agreement usually made for their service. . . . Such an authority is absolutely necessary to the safety of the ship and of the lives of the persons on board." Abbott on Shipping, 177. "A deliberate refusal to do duty has always been considered as one of the highest offenses by the maritime law. The power to command must reside somewhere, and the law has placed it in the master. He may exercise it properly, or *harshly* and *unjustly*, and for this he is answerable when he returns to port." *The Palledo*, 3 Ware, 321.

"The master has an absolute authority on board his ship, and his orders, if not unlawful, are and must be imperative; submission is amongst the first duties of the seaman." *United States v. Smith & Coombs*, 3 Wash. C. C., 525. "In cases of necessity or calamity during the voyage, the master is by law created agent for the benefit of all concerned, and his acts done under such circumstances, in the exercise of a sound

discretion, are binding upon all parties in interest in the voyage." *Jordan v. Warren Ins. Co.,* 1 Story C. C., 343. While treating upon the authority of the master, in the case of "*The Almatia,*" Deady's Rep., 478, the court says: "He had a right to have the sails furled to please his eye, and in accordance with his notions of what was *professional and seamanlike.* Some one must give the law upon these matters, and the general rule is that the seaman must obey what his master commands." The seaman on the voyage has no alternative but to obey or suffer punishment. He cannot dissent from or abandon the service on account of the dangers or unreasonableness of the particular service required, as he might do in port, but must obey at any risk or hazard to himself; and yet he voluntarily incurs no risk, but acts upon the risk and responsibility of those whose lawful authority demands of him implicit obedience to every lawful command, however unreasonable or dangerous, to which he reluctantly submits to his own personal injury. The law which imposes upon the master this almost absolute authority, also imposes upon him the fullest responsibility for its careful, considerate and reasonable exercise in all emergencies, and in default of which it also imposes upon him a clear legal liability — or upon those he represents — for any personal damages occasioned by such default.

The plaintiff, by protesting against the dangerous and unreasonable manner of accomplishing the object proposed, and by which he was injured, and suggesting a safer and more reasonable way of accomplishing the same object, and then submitting to the order and authority of the master, and attempting to do the work required in a careful and prudent manner, did his whole duty, and thereby removed from himself all of the responsibility. The master, by declining and rejecting the safer and reasonable manner proposed by the plaintiff, and by gross carelessness imperatively commanding the plaintiff to perform the work in the more dangerous way,

assumed all of the responsibility and risk for the defendants. The plaintiff entered upon this dangerous service under duress and submission to compulsion, without the liberty of choice or freedom of the will, and is therefore not responsible for his acts, without negligence. "Cases may and do arise when instant obedience to the orders of the mate. is necessary; such as orders to take in sail in a sudden squall, or. to cut away the rigging or spars, or to go aloft on a sudden emergent duty, when the mate may instantly enforce obedience by the application of positive force, and indeed of all the force required to produce prompt obedience." Flanders on Shipping, § 73; *United States v. Hunt*, 2 Story C. C., 125; *United States v. Taylor*, 2 Sumner, 588.

The plaintiff avers that he used care, or was not in fault, in attempting with others to execute the orders of the master, and that he submitted to the judgment and authority of the master after protest, and thus most clearly brings himself within the protection of these principles, and establishes his right of recovery. He could not have safely or lawfully done otherwise than submit under the circumstances; for his disobedience would have been revolt and mutiny, and he would have been liable to personal hazard and punishment; and to hold, under such circumstances, that he cannot recover for his personal injuries, received without any fault of his own, and solely by the careless and unreasonable orders of his superior, would be outrageously unjust.

The owners of the vessel, for whom the master was acting *pro hac vice*, are liable for the injuries of the plaintiff caused by the want of skill and ordinary care in commanding such dangerous and unreasonable service. "By the general rule of the maritime law, the owners of a vessel are liable for all injuries caused by the misconduct, negligence or unskilfulness of the master, provided the act be done within the scope of his authority as master." Beawes' Lex Mercatoria (4th London

ed.), 54; *Stinson v. Wyman*, Daveis, 172; *The Waldo*, id., 161; *Dusar v. Murgatroyd*, 1 Wash. C. C., 13.

In the case of "*The State Rights*," Crabbe, 22–24, Mr. Justice HOPKINSON uses the following language, which is so comprehensive and expressive of the principles governing this case, that a copious quotation will be warranted: "In the case now before this court, I do not understand it to be denied that the owners of a vessel are answerable for the acts of their captain done within the course and scope of his employment and business. Is this not enough for this case? Assuredly it was within the course and scope of the employment and authority of Captain Allen, to direct the 'State Rights' to be steered at his pleasure. He had full power to do this, derived from his owners, and all on board were bound to obey his orders without interposing their judgment as to the consequences to him or his owners. By the execution of such an order a wrong is done to another party. On what principles of the common or maritime law can the owners of the offending vessel, the principals of such an agent, whom they have armed with the power to do the wrong, throw the responsibility from themselves?"

These principles are further sustained by Desty's Shipping and Admiralty, 124; *Niagara v. Cordes*, 21 How., 7; *Stone v. Ketland*, 1 Wash. C. C., 142; *The Ben Flint*, 1 Abbott, U. S., 126; *Reed et al. v. Canfield*, 1 Sumner, 195; *Brown v. Overton*, Sprague, 462; *Brown v. The D. S. Cage and Owners*, 1 Woods, 401. This treatment of the subject of the liability of the owners for the tortious acts of the master of a vessel has been more extended because I have been unable to find any reported case of closely analogous facts.

*By the Court.* — The order of the county court sustaining the demurrer to the amended complaint is reversed, with costs, and the cause remanded for further proceedings according to law.