## THE HETTIE ELLIS.[1]

*(Circuit Court, E. D. Louisiana. June, 1884.)*

ADMIRALTY—JETTISON—CONDUCT OF MASTER.

In a case in admiralty, where the shipper has been prejudiced by the jettison of his goods, the court may look into the facts of the case and determine whether the owners have appointed a competent master, and whether that master has used reasonable skill and judgment in encountering the peril of the sea that has made the jettison necessary; and where a jettison has been necessary through the conduct of the master, concurring with a peril of the sea, whether that conduct was reasonably skillful, judicious, and prudent.

S. C. 20 FED. REP. 393 and 507, affirmed.

Admiralty Appeal. On petition for a rehearing.

[1] Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

*E. H. Farrar,* for libelants.

*James R. Beckwith,* for claimants.

PARDEE, J. "The obligation of the owners is to appoint a competent master, having reasonable skill and judgment and courage, and they are liable if, through his failure to possess or exert these qualities in any emergency, the interest of shippers is prejudiced. But they do not contract for his infallibility, nor that he shall do, in an emergency, precisely what, after the event, others may think would have been best." *Lawrence* v. *Minturn,* 17 How. 100.

In the same case it is said: "But if a jettison of a cargo becomes necessary in consequence of any fault or breach of contract by the master or owners, the jettison is attributable to that fault or breach of contract, and not to sea peril, though that may also be present and enter into the case." From this authority it follows that in a case in admiralty, where the shipper has been prejudiced by the jettison of his goods, the court may look into the facts of the case and determine whether the owners have appointed a competent master, and whether that master has used reasonable skill and judgment in encountering the peril of the sea that has made the jettison necessary, and where a jettison has been necessary through the conduct of the master, concurring with a peril of the sea, whether that conduct was reasonably skillful, judicious, and prudent. In this inquiry neither infallibility nor the wisdom furnished by the result are to be required, but certainly the ordinary skill, judgment, and prudence of the profession are to be required, else the shipper's goods are at the mercy of the master. The rule is to be found between infallibility and irresponsibility. And it is no new doctrine that the master and owners may be held responsible for the want of skill and judgment on the part of the master in sailing his ship.

"If the master remain in port without sufficient cause when the season is favorable for the voyage, and the goods are, in consequence, lost or injured, the ship-owner is bound to repair the loss. But the master is culpable if he sails in spite of wind and weather; for the voyage must be made according to the circumstances of the ship, time, and place, and according to the practice of skillful navigators." Fland. Mar. Law, 157.

"There is good authority in the maritime law for the position that the master is bound *not* to sail out in tempestuous weather, though the point has not been directly adjudicated in this country or in England. The laws of Oleron, of West Capelle, and of Wisbuy expressly make him liable for any damage happening to the cargo in consequence of sailing in bad weather." Curt. Mer. Seam. 215.

"For if any injury or loss happen to the ship or cargo by reason of his negligence or misconduct, he is personally responsible for it; and although the merchant may elect to sue the owners, they will have a remedy against him to make good the damages they are compelled to pay." Abb. Shipp. 167.

"And the same doctrine is recognized in our law. In *Stone* v. *Ketland*, 1 Wash. C. C. 142, it was laid down as a rule that a man who undertook to navigate a ship was pledged to his owners, and they to all the world who might be affected, for his skill, care, and attention. It is not sufficient that he exercises his best judgment. He must possess competent skill as a commander. In *Purviance* v. *Angus*, 1 Dall. 180, the court said that 'it is a wrong position that a master of a ship is not answerable for an error in judgment, but only for the fault of the heart in civil matters. Reasonable care, attention, prudence, and fidelity are expected from the master of a ship.'" Abb. Shipp. (Smith & Perkins' Notes) p. 167, note 1, and p. 119 and note.

In the case of *The Hettie Ellis* it cannot be found from the evidence, and considering all presumptions in favor, that the owners furnished "a competent master, having reasonable skill and judgment." If they did furnish such a master, then it is clear from the evidence that he failed to exert such reasonable skill and judgment, whereby the interest of the shippers was prejudiced. If the master was not competent, then the owners are liable for his want of skill and judgment, resulting to the prejudice of the shippers. If he was competent, all that need be said is that his conduct in unnecessarily putting his ship in peril was reckless and foolhardy, without reasonable skill and judgment, and was faulty and negligent in the extreme.

On the trial of the case the court found that the Hettie Ellis had anchored every previous night of the voyage, although the weather was fair, in safe places; but that on the night in question, which was dark and very foggy, and threatening to be stormy and tempestuous, the master neglected to anchor behind Round island, as was usual, and as other vessels did, but attempted with a square-bowed, flat-bottomed scow or barge, with a high deck-load, and without landmarks in sight, to navigate an open sound full of shoals, and that this conduct was unskillful, lacking judgment, faulty, and negligent, and concurred in making the jettison necessary, and for this faulty and negligent conduct the owner and the ship were responsible to the shippers who were prejudiced thereby.

After a thorough re-examination of the case, I am satisfied that the decision and decree were correct. A rehearing is therefore refused.