ALFRED ELDRIDGE, Respondent, *v.* THE ATLAS STEAMSHIP COMPANY, Appellant.

Plaintiff, a seaman employed upon one of defendant's vessels, was commanded to operate a winch which he knew could not, because of visible defects, be operated without risk of danger to himself; he obeyed the order because he knew that disobedience would result in his punishment, and although exercising reasonable care, was injured. In an action to recover damages, *held* (FOLLETT, Ch. J., HAIGHT and PARKER, JJ., dissenting), that conceding the order was unlawful and that plaintiff might rightfully have refused obedience, or that he made a mistake, as such refusal would have subjected him to punishment, his obedience was not *per se* negligence and that the question was properly submitted to the jury.

Reported below, 58 Hun, 96.

(Argued March 16, 1892; decided October 1, 1892.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made October 28, 1890, which affirmed a judgment in favor of plaintiff, entered upon a verdict and affirmed an order denying a motion for a new trial.

This was an action for negligence, in that plaintiff, a sailor in the employ of defendant upon its ship, while in obedience to orders he was operating its winch — an alleged unsafe machine — had his hand caught in the cog-wheels thereof, and the ends of four fingers taken off.

November 9, 1886, plaintiff at New York engaged as an able-bodied seaman to serve on board defendant's ship, the Alvena. The defendant is a British corporation, but it was not shown under what flag the ship sailed. The plaintiff had not served upon that ship before. The ship had three winches, two horizontal — one, No. 3, diagonal. The cog-wheels of the horizontal winches were covered; those of the diagonal No. 3 were without cover. No. 3 was an old-fashioned winch; the other two of modern construction. Plaintiff did not observe No. 3 before he went to duty November tenth, on which day the ship sailed from New York for Kingston, Jamaica. From Kingston the ship proceeded to Aspinwall, and there was hauled alongside defendant's ship Athos; some of the cargo of the Athos was then transferred to the Alvena. Plaintiff was ordered to operate winch No. 3 in transferring the cargo. He had to stand between the winch and the house of the ship — a space eighteen inches wide. He had to operate a valve with his right hand so as let the steam on or shut it off as ordered by his superior, and to operate a lever with his left hand so as to revolve the drum forward or backward as ordered. There was so much noise that these orders were given by signals by the officer. Thus the officer raised his hand as the order to go forward, moved it down to go backward, opened it wide to stop, and twirled it round fast to go fast, etc. The officer was on the right of the front of the plaintiff. The valve to be moved by plaintiff's left hand was as high as his knee and was at the end of the winch near its middle. The lever to be

moved by his left hand was on the outside of the side of the winch. The plaintiff's testimony was to the effect that he had to reach over the big and small cog-wheels to take hold of the lever. The defendant's testimony was to the effect that he might have reached around the winch and seized the lever without passing his hand over the cog-wheels. The size of the winch is not given.

While watching for orders and at the same time obeying them, the plaintiff's fingers, in grasping for the lever, came in contact with the cog-wheels and were crushed. His contention is, if these wheels had been covered as the wheels of the other winches were, his fingers would have been protected. Defendant gave testimony tending to show that the winch was safe enough if plaintiff had been reasonably careful. The trial court charged the jury that if plaintiff entered defendant's service, knowing that this winch had no cover, he could not recover upon that ground, and if his own negligence in any way contributed to his injury he could not recover.

The court also charged that plaintiff was bound to obey all lawful orders of the defendant's officers and for a refusal would have forfeited his wages or been punished. Testimony was given to this effect.

The court also charged that if this accident had happened on land, plaintiff not working as a sailor, he could not recover, but left it for the jury to say whether in view of the plaintiff's duty as a sailor he was guilty of negligence.

*Everett P. Wheeler* for appellant.

*Jacob Fromme* for respondent.

LANDON, J.   In view of the verdict and the instructions of the trial court, we assume that the plaintiff knew that the winch could not be operated without risk of danger to himself, but was constrained to obey the order given him by his superior to operate it, because he knew that disobedience would result in his punishment, that he, therefore, did operate

it and because of its known defects of construction was injured, notwithstanding his exercise of reasonable care to avoid injury.

The defendant insists that the command to operate this dangerous winch was not lawful, and, therefore, plaintiff might rightfully have refused obedience. If it be conceded that the command was unlawful, it does not necessarily follow that plaintiff's obedience was negligence. For whether the command was lawful or unlawful, the evidence is to the effect that his disobedience would have resulted in his punishment. The boatswain, under whose orders plaintiff was operating the winch, testified that the plaintiff "was bound to obey the order that I gave him ; if he did not obey the order he would have been put in irons and fined." Grant that the plaintiff had been so learned in the law as to know that the courts would ultimately decide that the command was unlawful, and disobedience to it lawful, he could know no way of escape from the ship's punishment of his disobedience, for there was none. The jury found in effect that he was coerced through fear of punishment into obedience. If the command was unlawful, the defendant's case is not improved by the fact that the punishment it would visit upon disobedience was also unlawful. In any event the plaintiff was in a dilemma. He had to choose between present punishment with a possible hope of remote justification, and customary obedience to orders with the hope that by care he would escape injury. Grant that he made a mistake in judgment under these difficult conditions, the law does not adjudge it to be negligence, and the jury upon consideration have refused to do so. We cannot hold that their refusal was error.

Except as the case is affected by the dangerous condition of the winch, the order to operate it was lawful and the plaintiff's obedience was the duty of his service. Whatever may be the practical administration of law or of arbitrary power on shipboard, the plaintiff, if amenable to the law of the United States, was also punishable by our courts for willful disobedience to any lawful command. Section 4596, U. S. R. S.

provides, " Whenever any seaman who has been lawfully engaged  *  *  *  commits any of the following offenses, he shall be punishable as follows : Fourth. For willful disobedience to any lawful command, by imprisonment for not more than two months, and also at the discretion of the court, by forfeiture out of his wages of not more than four days' pay."

Thus the plaintiff had to choose whether he would obey the order, or take the hazard of liability under the statute. Whatever may have been the law of the flag of the ship, or of the United States of Columbia, in whose port the injury was received, it was not shown, and hence the parties in our forum must accept the law as we administer it. (*The Scotland*, 105 U. S. 24.)

In this view of the case, if the plaintiff made a mistake in judgment, the defendant could rightfully ask no more than that the jury should pass upon the facts.

We find no error of law requiring a reversal.

The judgment should be affirmed, with costs.


HAIGHT, J. (dissenting).   This action was brought to recover damages for a personal injury.

On the 9th day of November, 1886, the plaintiff, at the city of New York, engaged as an able-bodied seaman to. serve on board defendant's ship " Alvena."   The ship had three winches for the purpose of lowering into and hoisting freight from the hold of the vessel.   Two were known as horizontal and the other as  diagonal winches.   The cog-wheels of the two former were covered, whilst those of the latter were open and old fashioned.   On the tenth day of November thereafter the vessel sailed for Kingston, Jamaica, at which place it arrived in due time, and the plaintiff there worked the latter winch for a while.   From Kingston the ship proceeded to Aspinwall and the plaintiff was again ordered to operate the same  winch in transferring the cargo.   In doing so he had to turn  a valve with his right hand so as to let on or shut off the steam, and to operate a lever with his left hand so as to  move  the  drum

forward or backward as directed by the officer in charge. These directions were given by means of signals made with the hand, and whilst the plaintiff was looking at the officer for signals he attempted to pass his hand over the cog-wheels of the winch to the lever, and in doing so his fingers were caught between the wheels and he received the injury for which this action was brought.

Upon the trial after the plaintiff rested and again at the close of the evidence, the defendant moved for a dismissal of the complaint upon the grounds that there was no evidence of negligence on the part of the defendant; that the injury resulted from a risk assumed by the plaintiff as an incident of his employment, and that he was guilty of contributory negligence. The motion was denied and an exception was taken.

The defendant's counsel then requested the court to charge the jury that " an employe, in accepting service with a knowledge of the character and position of the machinery, the dangers of which are apparent, and from which he might be liable to receive injury, assumes the risks incident to such employment and cannot recover for any injuries resulting therefrom."

The court so charged subject to the qualifications which he had already made in his charge as to the peculiar position of the plaintiff on the vessel, and that the rule of law embraced in the request is only applicable to ordinary cases where the plaintiff is entirely free to work or not to work. The charge already made was " that the rule which ordinarily would be applicable to a case of this character if it occurred on land did not apply on ship-board and for this reason that under the maritime law, which was applicable to the owners of this ship, any seaman who shipped on board was subject to the lawful commands of his superior officers; that if he were directed, as it was shown that he was in this case, to work this winch, it could not be said that it was something that he did voluntarily, that it was to be considered there was a species of coercion about it, and that he had no option but to operate the winch when he was directed to do so, and that, therefore, it could not be considered that he was guilty of contributory neg-

ligence which would defeat his action, merely because he went to work upon a machine which was obviously dangerous to operate." An exception was taken by the defendant to the qualification made by the court.

It is now claimed that the defendant is liable for the reason that it had furnished no cover for the wheels of the winch, and that the plaintiff is not chargeable with contributory negligence for the reason that he was a sailor upon the high seas and was obliged to obey the orders of his superior officer. There is no claim that the winch was out of repair. It was an open, visible structure upon the deck of the vessel and the cog-wheels were in plain sight. It had been in use many years and no similar accident is reported. The plaintiff had been a sailor for many years, was familiar with the use of winches, had used this one at Kingston, but was accustomed to the use of those with covers.

The rule is well stated in *Sweeney* v. *Berlin and Jones Envelope Co.* (101 N. Y. 520), where it was held that a servant accepts the service, subject to the risks incident to it; and where he enters into the employment when the machinery and implements used in the master's business are of a certain kind or condition, and the servant knows it, he voluntarily takes the risk resulting from their use, and can make no claim upon the master to furnish other and different safeguards. That a master may carry on his business with an old machine not provided with all the safeguards attached to new machines; that he may discharge a servant employed to run it, who refuses to perform his stipulated service, and a threat to do so is not coercion, which will make the master liable for injuries to the servant resulting from the use of the machine.

In that case the plaintiff was operating an embossing machine in a printing office. The process required that the plate and die should coincide. To effect that, he necessarily placed his hands between them, but before doing so, he put his foot upon the pedal and stopped the press. All of a sudden the cam came around and jolted harder than usual, causing his foot to slip from the pedal. The machine started and

his hand was crushed.   It was claimed that the defendant was guilty of negligence in not providing a clutch other than the pedal, to prevent motion in the machine while the operator's hands were exposed to danger.   It was held, however, that the plaintiff could not recover.

In the case of *Appel* v. *Buffalo, New York and Philadelphia Railway Co.* (111 N. Y. 550), the plaintiff's intestate was a switchman employed in the defendant's yards, helping to make up and distribute trains.   While so engaged, his foot was caught in a frog, which connected two converging tracks, and he was run over and killed.   It was claimed that the defendant was negligent for the reason that it had failed to place blocks in the openings of the frogs, which would prevent such accidents.   It appeared that blocks were in use by other roads for the purpose of preventing similar accidents, but, notwithstanding, it was held that, in accepting and continuing in the employment, he assumed the hazard, and that the plaintiff could not recover.

And to the same effect are *Hickey* v. *Taaffe* (105 N. Y. 26); *De Forest* v. *Jewett* (88 id. 264); *White* v. *Witteman Lithographic Co.* (43 N. Y. S. R. 312).

The winch would have been safer had a covering been placed over the wheels.   After an accident has occurred, it is often easy to discover means that would have prevented it. But the plaintiff knew that there was no cover and the consequences that would result from the placing of his hand between the wheels.   If operated with care, the machine was reasonably safe, and if so, under the rule to which we have called attention, the defendant did not become liable by reason of its failure to furnish an additional safeguard in the form of a cover.

But again, the plaintiff was reaching for the lever over the cog wheels.   He did this without looking.   A glance of an instant would have disclosed the position of the wheels and enabled him to have reached the lever in safety.   Instead of looking, he thoughtlessly extended his arm toward the lever, and in doing so, placed his fingers between the cogs of the

revolving wheels. In this he was negligent. To hold masters liable under such circumstances would practically make them insurers against accidents to their employes. In our large factories and machine shops hundreds of machines are to be found with wheels open to view and to touch. Persons employed to operate them are required to exercise ordinary care, and hitherto it has not been understood to be necessary that the wheels should be covered so as to prevent them from thoughtlessly placing their fingers between the wheels.

But it is claimed that the ordinary rule has no application in this case for the reason that the injury occurred on shipboard; that the plaintiff, having been commanded by his superior officer to operate the winch, was under coercion and had no right to refuse. But it does not appear to us that this question is presented by the evidence.

Under the maritime law the master has absolute authority on board of his ship, and his orders, if lawful, must be obeyed by the common seamen. The master, however, has no right to require a seaman to operate a dangerous machine.

If, as we have shown, the machine was reasonably safe if operated with care, the master had the right to require the plaintiff to operate it, and it was his duty to observe the care necessary to prevent the injury.

But assuming that the machine was dangerous, there were no threats made by the master or evidence given to show coercion. The usual order was given to the plaintiff to operate the winch. He made no objection or complaint in reference thereto. He was in port and could have left the vessel and sought the protection of the consul if the orders of the master were unlawful.

Coercion must be established by the evidence. The bare fact that he was told to operate the winch does not establish an intent to unlawfully interfere with him, and we cannot, from that fact alone, assume that he would have been unlawfully punished had he refused to obey the order.

In the case of *Thompson* v. *Hermann* (47 Wis. 602), the plaintiff was ordered by the master to adjust a gaff which had

been unshipped, by standing upon the lower boom and pulling upon the bow-line fastened to one of the horns of the jaw of the gaff, and which was liable to slip from the horn which was smooth and slippery, and cause the plaintiff to fall from the boom to the deck below. The plaintiff thinking it unsafe and dangerous to obey such an order objected and protested against the same, and informed the master that the main gaff could be adjusted by means of a tackle there at hand, and with safety to all concerned. But the master refused to adopt such precautionary means, and imperatively ordered the work to be done in the manner directed by him. The plaintiff thereupon undertook the task, and was in the *careful* discharge of his duty in obedience to the order when the line slipped from the horn of the jaw, causing the plaintiff to fall from the boom and receive the injuries for which the action was brought. It was found as a fact that the master was grossly negligent in not adopting the safe and proper means suggested by the plaintiff. It was held that the plaintiff could recover. But in that case the seaman objected and protested against the improper order of the master. He was, however, imperatively ordered to do the work in the manner directed. Here was evidence of coercion, and no contributory negligence, clearly distinguishing the case from the one we have under consideration.

It consequently appears to me that the exceptions to which we have called attention were well taken, and that the judgment should be reversed and a new trial ordered, with costs to abide the event.

All concur with LANDON, J., except FOLLETT, Ch. J., HAIGHT and PARKER, JJ., dissenting.

Judgment affirmed.