Dean sought to sustain his action upon two grounds: (1) That subscriptions were covered by the words "property, possession, claim, and demand whatsoever, as well in law as in equity, of the said party of the first part"; (2) that, the subscription having been made by an incorporator for the purpose of organizing the corporation, it was an incident of the franchise, and passed under the mortgage. It was held that the mortgage was not a lien upon the subscription, and that the purchaser under the foreclosure acquired no title to it.

Assuming that, under the statutes of this state, a railroad may mortgage its choses in action, and by general words, I think the purchaser under the foreclosure of such a mortgage acquires no title to choses in action which are not described in the judgment notice of sale, and in the conveyance, with sufficient particularity to be identified. Dean v. Biggs, supra; Milwaukee & M. R. Co. v. Milwaukee & W. R. Co., 20 Wis. 174; Smith v. McCullough, 104 U. S. 25; Morgan Co. v. Thomas, 76 Ill. 120; 5 Thomp. Corp. § 6197; Jones, Ry. Secur. § 108; 3 Wood, Ry. Law (1st Ed.) 1617. To hold that choses in action pass under general words, in judgments and conveyances, would cause confusion and uncertainty in respect to the property which the purchasers under foreclosure sales acquire. Judicial sales must describe with reasonable certainty the property sold. The judgment should be affirmed, with costs.

Judgment affirmed, with costs. All concur.

---

(17 Misc. Rep. 93.)

ANDERSON v. NEW YORK & C. MAIL STEAMSHIP CO.

(Supreme Court, Trial Term, New York County. May, 1896.)

SEAMEN—INJURIES IN SERVICE OF SHIP—CONTRIBUTORY NEGLIGENCE.

The obedience of a seaman to the commands of his officers in the management of the vessel is not negligence per se, though he knows that such commands cannot be carried out without risk of danger to himself. Geoghegan v. Steamship Co., 40 N. E. 507, 146 N. Y. 369, distinguished.

Action by Adolph Anderson against the New York & Cuba Mail Steamship Company for personal injuries. A verdict was rendered in favor of plaintiff, and defendant moves to set aside the verdict, and for a new trial. Denied.

Warren S. Burt (Jacob Fromme, of counsel), for plaintiff.
Carter & Ledyard (George H. Balkam, of counsel), for defendant.

GIEGERICH, J. This action is brought to recover damages which plaintiff claims to have sustained in consequence of the defendant's negligence, as hereinafter mentioned. The defense, briefly stated, is that the accident did not occur through any negligence of the defendant, but that it was caused either by the negligence of the plaintiff himself or by the negligence of a fellow servant. Upon the trial both parties introduced evidence in support of their respective contentions, and the case was submitted to the jury, which rendered a verdict in favor of the plaintiff for $4,715. Since the verdict is in his favor, plaintiff's version of the facts must be adopted (Scarff v. Metcalf, 107 N. Y. 211, 214, 13 N.

E. 796), and these are substantially as follows: The plaintiff, at the time of the accident, was in the employ of the defendant (a domestic corporation) upon the steamship Cienfuegos as an able-bodied seaman, in which occupation he had been engaged for about 22 years. He had been employed by the defendant for about 15 months before the accident and had worked on said steamship for about 8 months prior thereto. The accident occurred on the 17th day of December, 1889, at the port of Cienfuegos, in the island of Cuba, that being one of the ports visited by the steamer on her regular trip from New York to that and other ports in Cuba and thence back to New York. About a quarter to 6 o'clock in the afternoon of that day, while plaintiff was standing on the main deck, the carpenter of the ship directed him "to come down and give a hand to close the ports." Plaintiff had been told on the previous trip, by the captain of the ship, to obey the carpenter's orders whenever he called him for any assistance, and to obey the same as though he were the chief mate of the ship. The answer admits that "the chief officer of the said vessel commanded the said plaintiff to assist in closing the said ports." Plaintiff immediately went down with the carpenter to assist him, and when he reached the deck where the ports were situated he observed two large boilers, one on each side of the ship, and which boilers formed part of the cargo. A very large one lay on its side, and reached from the overall hatch to the side port, a distance of 10 to 12 feet. Plaintiff walked along the same until he and the carpenter reached the port port, which they closed; then, with the carpenter in the lead, they crossed from the port to the starboard side, over a part of the blind hatch, which, so far as plaintiff could see, was closed, and fastened the starboard port. After both ports were closed, it was so dark that plaintiff "could not see his hand before his face," there being no light of any kind, although, when open, considerable light entered through them. After the starboard port had been closed, plaintiff was ordered to return to the main deck. He went carefully along the deck, and, to avoid the said boilers, crossed over the part of the blind hatch, which before had appeared to him to be closed, and fell through to the bottom of the ship, a distance of about 14 feet, receiving the injuries of which he complains. When the carpenter heard that the plaintiff had fallen through the blind hatch, he ordered a light to be brought down, by means of which plaintiff discovered that between two and three feet of the blind hatch was uncovered,—about two planks on the fore part, the rest being closed. The covering for the blind hatch consisted of four pieces, and each piece consisted of three or four planks on each side and a beam in the middle. Prior to the accident plaintiff had only once assisted the carpenter in closing the port side, and upon that occasion the blind hatch was closed. Plaintiff was bound to obey the commands of his superior officers. He could not take a light into the hold of the ship unless told to do so, because, as testified, "they wouldn't allow it." On the occasion referred to, the carpenter did not have a lantern with him.

After the verdict in favor of the plaintiff was rendered the de-

fendant moved to set it aside, and for a new trial upon the grounds above specified. The defendant contends that the facts stated show the case to come clearly within the rule that a servant in entering his master's employment assumes all the ordinary risks incident to that employment, and if the defect or the cause of the injury, whatever it may be, was known to the servant, the master was not liable for the injuries of the servant. While this, undoubtedly, is a correct exposition of the law as applicable to other kinds of employment, I am of the opinion that by reason of the peculiar character of the employment and the relations existing between the master and common seaman, it has no application to the case at bar. The maritime law is sensitive of the rights of seamen, and sedulous for their protection. The master's authority is quite despotic, and sometimes roughly exercised; and the accommodations of a ship upon the ocean are necessarily narrow and limited. That which on land and in another relation would be contributory negligence, the maritime law scarcely recognizes, and readily excuses, and in many ways throws its protection around the seaman. Scarff v. Metcalf, 107 N. Y. 211, 215, 216, 13 N. E. 796. In matters relating to the owner's duty to the seaman, which the captain must perform, his neglect cannot be regarded merely as that of a fellow servant, but as the neglect of the owner. Scarff v. Metcalf, supra; Gabrielson v. Waydell, 135 N. Y. 1, 6, 31 N. E. 969. His powers are very extensive by virtue of his peculiar position. His is the agency to which the law looks for the fulfillment of the obligations resting upon the vessel's owners; and for his shortcomings and wrongdoings, when occurring in the performance of his duty, or within the scope of his employment, those owners must be held liable. He has absolute command over the seamen in matters pertaining to their duties. Gabrielson v. Waydell, supra. The seaman is bound to submit to the will, judgment, and discretion of the master, and obey his orders in the management of the vessel or for its repair, and willful disobedience to, any lawful command subjects him to severe punishment. Thompson v. Hermann, 47 Wis. 602, 3 N. W. 579; Eldridge v. Steamship Co., 58 Hun, 96, 11 N. Y. Supp. 468, affirmed 134 N. Y. 187, 32 N. E. 66; Pars. Mar. Law, p. 463; Rev. St. U. S. § 4596. In section 4596 of the federal statutes, it is provided as follows:

"Whenever any seaman who has been lawfully engaged * * * commits any of the following offenses, he shall be punishable as follows * * * Fourth. For wilful disobedience to any lawful command, by imprisonment for not more than two months, and also, at the discretion of the court, by forfeiture out of his wages of not more than four days' pay."

In Thompson v. Hermann, supra, the master wantonly and recklessly exposed the sailor, against his protest, to an unnecessary danger, in consequence of which he was injured. In an action against the owners for damages it was held that the sailor could not have safely or lawfully done otherwise than submit under the circumstances; for his disobedience would have been revolt and mutiny, and he would have been liable to personal hazard and punishment, and that, therefore, the owners were liable. The case of

Eldridge v. Steamship Co., in my opinion, cannot be distinguished in principle from the one at bar. In that the plaintiff at New York engaged as an able-bodied seaman to serve on board defendant's ship Alvena, which sailed from New York for Kingston, Jamaica. From Kingston the ship proceeded to Aspinwall, and there hauled alongside of defendant's ship Athos; some of the latter's cargo being then transferred to the Alvena. Plaintiff was ordered to operate a winch used in transferring the cargo, which he knew could not, because of visible defects, be operated without risk or danger to himself; but he obeyed the order, because he knew that disobedience would result in his punishment, and, although exercising reasonable care, was injured. In an action to recover damages it was held that, conceding the order was unlawful, and that plaintiff might rightfully have refused obedience, or that he made a mistake, as such refusal would have subjected him to punishment, his obedience was not negligence per se, and that the question was properly submitted to the jury. 134 N. Y. 187, 32 N. E. 66. A consideration of these authorities seems to me to establish the rule that a seaman is bound to obey the commands of his superior officers in the management of the vessel, even though he knows they cannot be carried out without risk of danger to himself, and that such obedience is not negligence per se, and the question should be submitted to the jury. In the present case the jury passed upon all the facts (which was all the defendant could rightfully expect), and by its verdict has fully established the negligence of the defendant, and plaintiff's freedom therefrom. Scarff v. Metcalf, supra; Eldridge v. Steamship Co., supra. Such finding is, in my opinion, amply supported by the evidence. The case of Geoghegan v. Steamship Co., 146 N. Y. 369, 40 N. E. 507, cited by the defendant, has no application to the present one. In that there was no direct proof as to how the deceased met his death; there was nothing to show that he fell through the open port, or that his disappearance was accidental. The evidence in the case tended to show that if any one was negligent in leaving the iron doors open it was the mate, for whose failure to perform this duty the owner of the ship was held not to be liable. That case differs materially from the one under consideration in this: that in the former the deceased was not required by any express order to pass out on deck at the point where the iron doors were left open, while in the latter the plaintiff was directed to close the ports, and in the darkness consequent upon closing them was ordered to return to the main deck, which orders he was bound to obey under severe penalties. If I am correct in these views, it follows that the question whether the accident was due to the negligence of a fellow servant does not arise in this case.

The cases of Britt v. Alexandre, 15 Wkly. Dig. 443; The Carl, 18 Fed. 655; The Gladiolus, 21 Fed. 417, affirmed 22 Fed. 454; Dwyer v. Steamship Co., 4 Fed. 493, 17 Blatchf. 472,—cited by the defendant, have no application to the questions involved in this case. They were brought by stevedores for injuries received while unloading cargoes of vessels in port.

For these reasons the motion to set aside the verdict and for a new trial is denied. An extra allowance of 5 per centum upon the sum recovered is awarded to the plaintiff. Order to be settled upon one day's notice.