WILLIAM FRANCIS DUGGAN, an infant, by his next friend, WILL-
IAM JOSEPH DUGGAN, *vs.* NEW JERSEY and WILMINGTON
FERRY COMPANY, a corporation existing under the laws of the
State of New Jersey.

*Personal Injuries—Steamboat—Management of—Due Care—Neg-
ligence—Common Carriers—Nonsuit—Verdict for Defen-
dant—Motion for New Trial—New Trial Granted
—Evidence—Damages.*

1.   After a nonsuit had been ordered by the Court and declined by
the plaintiff, and the jury directed to return a verdict in favor of the defen-
dant, a motion for a new trial was made, and granted, on the ground that
the plaintiff had produced sufficient evidence of negligence on the part of
the defendant to warrant the submission of the case to the jury.

2.   Testimony of a witness, although supplemental of other testi-
mony, yet mingled throughout with matters irrelevant and immaterial,
may be ordered by the Court to be stricken out.

3.   A witness who had heard all the testimony in the case, was asked
whether in his opinion a steamboat was properly managed in making a
certain landing.   *Held* not proper subject matter for expert testimony.

4.   Reasonable care when applied to the control and management of
a steamboat in motion, imports all the care which the particular circum-
stances of the place and occasion reasonably require.

5.   A steamboat company is bound to provide skillful and careful
servants, competent in every respect for the posts they are appointed to
fill in their service; and is responsible not only for their possession of such
care and skill, but also for the continued application of such qualities at all
times.

6.   The law applicable to common carriers, stated.

7.   The measure of damages, stated.

(*April* 2, 1909.)

JUDGES PENNEWILL and BOYCE sitting.

*Horace G. Eastburn* and *Anthony Higgins* for plaintiff.

*Walter H. Hayes* for defendant.

DUGGAN vs. N. J. & W. FERRY CO.        319

ARGUMENT.

Superior Court, New Castle County, March Term, 1909.

FOREIGN ATTACHMENT CASE (No. 94, March Term, 1908), brought by next friend of plaintiff, an infant, about ten months old, to recover damages for personal injuries alleged to have been occasioned by the negligence of the defendant company, on the fifteenth day of August, A. D. 1907, while said plaintiff was a passenger in its mother's arms, on the Steamer "Ulrica," owned and operated by the defendant on said date. This was a re-trial. At the close of the plaintiff's testimony, at the first trial, at the November Term, 1908, before Chief Justice Lore and Associate Judges Spruance and Boyce, the defendant moved for a nonsuit, on the ground that the plaintiff had totally failed to introduce any evidence, showing any negligence on the part of the defendant or any of its servants. The Court, after hearing argument of counsel upon said motion, directed a nonsuit, which the plaintiff, declined to accept; thereupon the Court directed the jury to render a verdict for defendant. Counsel for the plaintiff moved for a new trial and filed the following reasons:

1. That the verdict was against the law,
2. That the verdict was against the evidence;
3. That the verdict was against the weight of the evidence;
4. That this Honorable Court, in the trial of said cause erred in charging the jury, as follows:—

"For the reasons that the Court have just given in granting a nonsuit, we direct you to return a verdict for the defendant;" which said reasons for nonsuit were given by the Court, as follows:—

"The Court have carefully considered this motion for a non-suit and we are unable to see, in this case, any such evidence of negligence on the part of the defendant company as would warrant the jury as reasonable men in finding a verdict for the plaintiff; we are, therefore, constrained to order a nonsuit."

5. That the charge of the Court, which instructed the jury that there was no such evidence of negligence on the part of the defendant company as would warrant the jury as reasonable

men in finding a verdict for the plaintiff in said cause was erroneous and was a misdirection:

6. That the testimony introduced by the plaintiff in said cause was sufficient to entitle her to go to the jury upon the issue as to the defendant's negligence.

The application for a new trial coming on to be heard counsel for the plaintiff urged in support thereof:

1. It is not the ordinary experience of passengers on board a steamboat to be hurled violently about its decks when the steamboat is making a landing at its wharf, and a striking of the wharf to which the boat was making with sufficient violence to throw down a great many of its passengers, both those sitting down and those standing, raises a presumption of negligence in the management of the boat, and, unless the defendant in such case, satisfactorily establishes an excuse, it will be held at fault; *a fortiori*, is this presumption of negligence raised when the steamboat collides with a barge or boat, which is tied up at a wharf other than that at which the steamboat intends to make her landing.

*Burton vs. West Jersey Ferry Co.*, 114 *U. S.* 474; *Snelling vs. Brooklyn & New York Ferry Co.*, 13 *N. Y. Suppl.* 398 (*s. c. affirmed* 128 *N. Y.* 579); *Bartlett vs. N. Y. & S. B. F. & S. Trans. Co.*, 8 *N. Y. Suppl.*, 309 (*s. c. affirmed* 130 *N. Y.* 659); *The Bridgeport*, 7 *Blatch.* 361 (*affirmed* 14 *Wall.* 116); *The Granite State*, 3 *Wall.*, 310; *Cummins vs. Spruance*, 4 *Harr.* 315; *Cannon vs. Union Ferry Co.*, 29 *Hun.*, (*N. Y.*) 631; *Gash, an infant, etc. vs. The N. Y. Cent. & H. R. Ry. Co.*, 56 *App. Div. Rep.* (*N. Y.*) 473; *The Baltic, Fed. Cas.*, No. 823; *Railroad Co. vs. Pollard*, 22 *Wall.* (*U. S.*) 341; *Rosen vs. City of Boston*, 187 *Mass.* 245; *Christie vs. Griggs*, 2 *Campb.* 79.

The case at bar like those cases which we have cited on our first proposition is among that class of cases where proof of the occurrence of the accident and of the exercise of due care on the part of the plaintiff is *prima facie* proof of the defendant's negligence.

2. It having been shown that the exclusive management of the steamboat was in the hands of the defendant, at the time of

DUGGAN vs. N. J. AND W. FERRY CO. 321

ARGUMENT.

the accident, it was presumable that the accident arose from their want of care unless they gave some explanation of the cause by which it was produced; which explanation the plaintiff, not having the means of knowledge could not reasonably be expected to give.

*Carpu vs. London & Brighton Ry. Co.*, 5 *Q. B.* 747; 18 *Eng. Com. L.* 746; *Feital vs. Middlesex Ry. Co.*, 109 *Mass.* 398-405; *Le Barron vs. East Boston Ferry Co.*, 11 *Allen* 312-316; *Sokes vs. Sattonstall*, 13 *Pet.* (1 *U. S.*) 181; *Ware vs. Gay*, 11 *Pick.* 106; *Christie vs. Griggs*, 2 *Campb.* 79; *The Granite State*, 3 *Wall.* 310; *Bartrick, an infant, etc., vs. Erie Ry. Co.*, 36 *App. Div. Ref.* (*N. Y.*) 246-248; *Railroad Co. vs. Pollard*, 22 *Wall.* 341; *Scott vs. The London & St. Katherine Docks Co.*, 3 *Hurl. & Colt.* (*Encl. Ref.*) 596.

3. "It is not incumbent on the plaintiff after proving an accident which implies negligence, to go further and show what the particular negligence was, when from the circumstances proved it is not in his power to do so."

Same cases as last cited.

4. The question of negligence when applied to carriers of passengers is not one of degree or quantity; the carrier is liable for *any* negligence. The smallest negligence will render the carrier liable.

*The City of Panama*, 101 *U. S.* 462; *McAllister vs. Peoples Ry. Co.*, 4 *Penn.* 272-276; *Flinn vs. P., W. & B. R. R. Co.*, 1 *Houst.* 469-499; *Stokes vs. Saltonstall*, 13 *Pet.* 181-191; *Aston vs. Heaven*, 2 *Esp.* 533; *Stokes vs. Saltonstall, supra.*

5. In order to take the case at bar from the jury, there must have been in proof absolutely no evidence of negligence on the part of the defendant. The immediate cause of the accident was the striking of the *barge*. Does it appear from the proof that it was necessary to strike the barge, at all? Was it necessary in making a landing for the defendant to drive head-on into the barge, under the power of its engines? Must it not be apparent to every one that if the engines had been stopped and reversed a short time before coming to the barge that there need have been

no "awful crash;" that the passengers need not have been thrown violently about the deck? Is it the usual practice of this steam-boat to use a sand barge, so strongly constructed that it would possibly damage it as a bumper against which it could drive with impunity, for the purpose of being stopped so long as its own timbers were not shattered by the impact? Have the steamer's passengers no rights in the premises? Does not such conduct unexplained show, at least, the smallest evidence of negligence?

6. The facts proven show clearly that in the case at bar the accident cannot be attributed to inevitable accident.

(1). There is no evidence that the colliding vessel used *any* means in her power to prevent the collision while the law required her to use every means.

(2). There is no evidence that she used due care and caution in approaching the barge, or a proper nautical skill, both of which the law required of her.

(3). There is no evidence that she was carried against the barge by a *vis major*, which human skill and precaution, and a proper display of nautical skill could not have prevented.

*The Baltic, Fed. Cas.,* No. 723; *The Granite State,* 3 *Wall.* 310; *Union Steamship Co. vs. N. Y. & Pa. Steamship Co.,* 24 *How.* 307-313; *The Louisiana,* 3 *Wall.* 164-173.

7. From the facts established in the case, the collision of the "Ulrica" steaming under the power of her engines head-on against a heavy, strongly built barge, which was tied up at a wharf a slight distance beyond the wharf at which the "Ulrica" intended to land (the "Ulrica" at the time of the collision travel-ing at a speed which the jury might well find was from four to five miles per hour); That the plaintiff was a passenger on the "Ulrica" in the exercise of due care; That the collision was so violent that it knocked down a great many of the passengers of the "Ulrica," some of whom, at the time of being knocked down, were standing and some of whom were sitting; That the collision damaged some of the baggage or freight aboard the "Ulrica," left a dent or mark on the barge, and caused the mate of the "Ulrica" a concern to examine the boat to see if she were damaged

· DUGGAN vs. N. J. AND W. FERRY CO.        323

ARGUMENT—EVIDENCE.

by the impact; That the crash was so great as to hurl the plaintiff and his mother "violently" to the floor, bruising the mother, and very seriously injuring the plaintiff,—all establish most clearly that it cannot be held that the violence of the collision was no more than the ordinary gentle, orderly touching of a steamboat when landing at a wharf.

The fact stands out in this case that the accident was caused, not from the boat striking or touching the wharf with such a degree of force as is ordinarily necessary in making a landing, but from a head-on collision with a barge which from "some hook or crook" she "fetched up into." It is common knowledge that steamboats do not land "head-on" like a ferry-boat, but land side-ways to the wharf.

The allegations of the declaration were not demurred to, and every essential fact, which is necessary to establish the case of the plaintiff, as alleged in the declaration was proven at the trial, and in the absence of any defence, those facts, for the purpose of this case, must be taken to be true.

(Counsel for the defendant made an oral argument in opposition to the above contentions.)

After considering the above arguments of counsel, the Court set aside the verdict.

At the conclusion of the testimony of a witness for plaintiff, at the second trial, respecting the bent condition of the smoke-stack of the steamer "Ulrica" and as to certain repairs that were made to the same under the superintendence of said witness, after the accident, the Court said:

Boyce, J.:—It seems to the Court, after hearing all the evidence of this witness, that it is so mixed up with immaterial and irrelevant matters in connection with the repairs of the smoke-stack, that it should go out. The witness says he made the first examination of the smokestack in July, which was before the accident happened. The alleged collision had not then occurred.

Mr. Higgins:—I should argue, if your Honors please, very strongly against that disposition of this evidence.

BOYCE, J.:—The witness does not know what caused the bent condition of the stack.   He does not know whether it was caused by the collision,: or that it was not bent before the accident.

*Mr. Higgins:*—That is somebody else's testimony.   Unobjected testimony has gone in, and cross examination upon it, and it is too late, I respectfully submit, for it to be stricken out. I think it is both material and important to complete the story as to this accident.

BOYCE, J.:—True it is that much of the witness's testimony which we now deem irrelevant and immaterial was given without objection but the Court may very properly of its own motion, strike such testimony out, whenever it shall deem it its duty to do so.

*Mr. Higgins:*—Will the Court hear me as to its being irrelevant, before you strike it out.

BOYCE, J.:—Yes.   If this testimony is permitted to remain in, it would doubtless open the door for other irrelevant testimony in reply.   The object of this testimony was to further show the bent condition of, the smokestack immediately after the alleged collision.   That the stack was bent then has already been shown by two other witnesses.   The testimony of the witness now on the stand is simply supplemental of testimony already in, but it is mingled throughout with matters both irrelevant and immaterial, and in such a manner that we think it should be stricken out, and we so order.

*Philip Reybold*, a witness for the defendant, who qualified as a licensed master and pilot, showing that he had had experience in handling steamboats on the Christiana River and elsewhere, and was acquainted with the steamer "Ulrica," was asked by *Mr. Hayes* the following questions:

Q.   Have you heard all the testimony in this case?

A.   I have; yes, sir.

DUGGAN vs. N. J. AND W. FERRY CO.          325

PRAYERS.

Q.  Now I will ask you, if after hearing that testimony, in your opinion, the "Ulrica" was properly managed and navigated in making the landing at the foot of King Street Wharf, on the trip described, on the 15th of August, 1907?

(Objected to by counsel for plaintiff, as not a proper subject matter for expert testimony).

BOYCE, J.:—We sustain the objection.

### PRAYERS FOR THE PLAINTIFF.

The plaintiff requests the Court to charge the jury as follows:

1.  It is admitted that the defendant company was a common carrier, engaged in the business of conveying passengers on its steamboat, the "Ulrica," and that the plaintiff was rightfully a passenger on the steamboat "Ulrica" at the time of the accident.

2.  "Common carriers of passengers are responsible for any negligence resulting in injury to them, and are required in the preparation, conduct and management of their means of conveyance, to exercise every degree of care, diligence and skill, which a reasonable man would use under such circumstances.  This obligation is imposed on them as a public duty, and by their contract, to carry safely, as far as human care and foresight will reasonably admit.  A steamboat company, using as it does the powerful and dangerous agency of steam, is bound to provide skillful and careful servants, competent in every respect for the posts they are appointed to fill in their service; and is responsible not only for their possession of such care and skill, but also for the continued application of these qualities at all times."

*McAllister vs. Peoples Ry.*, 4 *Penn.* 272-276; *Flinn vs. P., W. & B. R. R. Co.*, 1 *Houst.* 469-499.

3.  If you find that the servants of the defendant company permitted the steamboat "Ulrica," upon which the plaintiff was a passenger, to run into and strike a boat or barge, which was, at the time of being struck, tied up to a wharf in the Christiana

River, it not being contended in this case that there was any *vis major* causing a collision, which a proper display of nautical skill might not have prevented, then we are not called upon to inquire wherein the steamboat "Ulrica" was not managed with proper nautical skill. This inquiry is superfluous where the collision was caused by a vessel having the power to move or stop at pleasure in a channel of sufficient breadth without any superior force compelling her to the place of collision. The fact that, in these circumstances, the steamboat did collide with the barge is conclusive evidence that she was not properly managed and that the defendant company was negligent.

*The Granite State*, 3 *Wall.* 310; *The Bridgeport*, 14 *Wall.* 116; *Cummins vs. Spruance*, 4 *Harr.* 315.

4. If the defendant was guilty of negligence, your verdict should be for the plaintiff and for such sum as will reasonably compensate him for all his injuries, including pain and suffering in the past, and such as may come to him in the future from the accident, and also for such permanent injuries as may impair his ability to earn a living and perform the ordinary functions and duties of life."

*Strattner vs. Wil. City Elec. Co.*, 3 *Penn.* 245-249; *Weldon vs. P., W. & B. R. R. Co.*, 2 *Penn.* 1, 14.

5. The jury are not bound in estimating the compensation to be made for the injury to the child to confine their consideration to his minority. They should take into consideration all the probable or even possible benefit, which might result to the child during its entire lifetime from having had the full use of its injured right arm, modified in their estimation as they should be by all the chances of failure and misfortune. They should take into consideration the probable and possible lessened ability of the plaintiff to earn a livelihood resulting from the said injury and including in their verdict damages for such sum as the plaintiff but for such injuries would probably have earned in his business during life, taking into consideration his age, his ability, disposition to labor and habits of living and expenditure.

The jury must be guided by their own good sense in awarding damages, in the case of an injury to an infant, for the reason that the pecuniary injuries for which recovery is had are always difficult of precise proof, uncertain and problematical, and what should be a proper compensation must always, upon such proof as can be made, be left to the sound judgment of the jury.

*Birkett vs. Knickerbocker Ice Co.*, 110 *N. Y.* 504-508; *Joyce on Damages, Vol.* 1 *Sec.* 588; *Goldstein vs. Peoples Ry.*, 5 *Penn.* 306; *Tulley's Admr. vs. P., W. & B. R. R. Co.*, 3 *Penn.* 455.

### PRAYERS FOR THE DEFENDANT.

The defendant, by *Walter H. Hayes*, its Attorney, requests the Court to instruct the jury as follows:

1.   That their verdict should be for the defendant.

2.   That this case is based upon the alleged negligence of the defendant.   Negligence is never presumed but must always be proved.   The burden of proving negligence, as attributable to the defendant, rests upon the plaintiff.   Negligence is the want of such care as a reasonably prudent and careful man would use under similar circumstances.   That they must determine from the evidence whether there was any negligence that caused the accident, and if there was, whether it was the  negligence of the defendant.

*Queen Anne R. R. vs. Reed*, 5 *Penn.* 231; *Baldwin vs. Peoples Ry. Co.*, *March Term*, 1908.

3.   That there is no liability on the part of the defendant, simply because the accident happened, in addition to the happening of the accident it must appear to the satisfaction of the jury by a preponderance of the evidence, that such accident was caused by the negligence of the defendant.

*Lawless vs. Pusey and Jones Co.*, 3 *Penn.* 3-4.

The mere fact of an injury suffered by a passenger, while on his journey, without evidence connecting the carrier with its cause, is not sufficient to raise a presumption of negligence on the

part of the carrier. Nor is mere proof that something unusual and dangerous happened, without connecting the carrier with its cause, sufficient. Thus, bare evidence that the vehicle suffered a severe shock, is not sufficient.

*Saunders vs. Chicago R. R. Co.*, 60 *N. W.* 149.

4. "A common carrier of passengers is liable for injuries to the latter in case of the carrier's negligence. The law exacts great care, diligence and skill from those to whose charge as common carriers passengers are committed. They are responsible for any negligence resulting in injury to passengers, and are required in the preparation, conduct and management of their cars or means of conveyance to exercise every degree of cars that a reasonable man would use under like circumstances. But while the common carrier is held to strict care in the safe transportation of its passengers, it must nevertheless be borne in mind that it is not an insurer of their safety, but responsible only for its own negligence.

"To entitle the plaintiffs to recover at all, it must have been shown to your satisfaction by a preponderance of the evidence, that the negligence which caused the accident and injuries, if any there were, was the fault of the defendant company. The burden of proving such negligence rests upon the plaintiff, and the defendant can be held liable only for such negligence as constituted the proximate cause of the injuries complained of.

"The term ordinary care, when applied to the management of railway cars in motion, imports all the care which the peculiar circumstances of the place or occasion reasonably require, and this will be increased or diminished according as liability of danger and accident, and injury to others, is increased or diminished in the movement and management of such cars."

*Baldwin vs. Peoples Railway Co. Supra.*

Boyce, J., charging the jury:

Gentlemen of the jury:—This action was brought by William

DUGGAN vs. N. J. AND W. FERRY CO.        329

CHARGE.

Francis Duggan an infant, by his next friend, William Joseph Duggan against the New Jersey and Wilmington Ferry Company to recover damages for personal injuries alleged to have been occasioned by the negligence of the defendant company. We decline to instruct you to find for the defendant as requested. We submit the case to you for your determination whether, under all the evidence produced before you, the injuries complained of were, or were not, the result of the negligence of the defendant company.

The declaration contains five counts. The first three counts are substantially the same. The first count in part is as follows: The plaintiff avers that heretofore, to-wit, on the 15th day of August, A. D. 1907, at New Castle County aforesaid, the said defendant so negligently and carelessly ran and operated its said steamboat Ulrica, upon which the said plaintiff was a passenger for hire, that, in consequence thereof, the said boat collided with or struck a barge, lying in the said Christiana River, thereby causing the said plaintiff, who was then and there in the exercise of due care and caution on his part, to be violently thrown and hurled from the lap or arms of his mother, Ella C. Duggan, who was then and there holding the said plaintiff, to and upon the floor or deck of the said boat, together with his said mother, Ella C. Duggan; that by means of the premises, the said plaintiff was struck and injured in his right arm and fore-arm, whereby the said plaintiff suffered complete paralysis of the muscles of the said arm and fore-arm, so that the plaintiff is wholly unable to use the said arm or fore-arm, and other parts of the body of the said plaintiff were greatly bruised, lacerated and injured, to-wit, at New Castle County aforesaid; and also by means of the premises, the said plaintiff became and was sick, sore, lame, disordered and injured, and so remained and continued for a long space of time, to-wit, hitherto, during all of which time the said plaintiff suffered and underwent great pain."

The fourth and fifth counts are substantially the same. The fourth count avers in part that "while the said steamboat was approaching the said landing or wharf, and when about to

stop thereat, the said defendant so negligently and carelessly
and recklessly ran and operated the said boat, that it then and
there struck another boat, then and there lying near the said
landing or wharf; that the said steamboat owned and operated by
the said defendant as aforesaid, and upon which the said plain-
tiff was a passenger as aforesaid, was suddenly and violently
stopped, whereby the said plaintiff, who was then and there, at
the special instance and request of the said defendant, riding as
a passenger on the said defendant's boat, and in the exercise of
due care and caution on his part was violently thrown and hurled,
with his mother, Ella C. Duggan, who was then and there holding
the plaintiff upon her lap, upon the floor or deck of the said boat,
whereby, the fingers of the said Ella C. Duggan, who had her
left hand caught in the plaintiff's armpit on his right side at the
time when the said plaintiff and the said Ella C. Duggan were
thrown as aforesaid, were caused to compress with great force
and violence certain of the nerves of the plaintiff's right arm,
and whereby, the nerves of the plaintiff's arm were greatly and
permanently injured, bruised, disordered and shattered, and the
right arm of the said plaintiff became paralyzed"   *   *   *
"and was then and there permanently injured."

The defendant company contends that it exercised reason-
able and proper care and caution in the movement and manage-
ment of its steamboat in approaching its wharf, in this City and
at the time of the accident.   You have heard the testimony.
We shall not attempt any review of it.   You have it all before
you, and you are the exclusive judges of its weight and value.

Whether a particular accident was the result of negligence,
and whose negligence, if any, is a question of fact for the deter-
mination of the jury from all the evidence.   Negligence is never
presumed.   It must be proved.   It is the want of ordinary care,
—such care as a reasonably prudent and careful person would
exercise under similar circumstances.

Reasonable care when applied to the control and manage-
ment of a steamboat in motion, imports all the care which the
particular circumstances of the place and occasion reasonably

require, and this will be increased or diminished according as the liability of danger and accident, and injury to others, is increased or diminished in the movement and management of such a boat.

The burden of proving negligence rests upon the plaintiff. And it must be proved to the satisfaction of the jury by a preponderance of the evidence—that is, by the greater weight and value of the evidence.

It is, therefore, incumbent upon the plaintiff to satisfy you from the evidence adduced that the accident complained of was caused by the negligent conduct and management, on the part of the defendant company, as alleged, to entitle him to a recovery in this action.

This Court has held that "Common carriers of passengers are responsible for any negligence resulting in injury to them, and are required in the preparation, conduct and management of their means of conveyance, to exercise every degree of care, diligence and skill, which a reasonable man would use under such circumstances. This obligation is imposed on them as a public duty, and by their contract, to carry safely, as far as human care and foresight will reasonably admit." A steamboat company is bound to provide skillful and careful servants, competent in every respect for the posts they are appointed to fill in their service; and is responsible not only for their possession of such care and skill, but also for the continued application of these qualities at all times.

A steamboat company is not, however, an insurer of the safety of its passengers, but it is required to exercise the highest degree of care and diligence that is reasonably practicable in securing their safety, by keeping its boat under the control and management of skilled and competent servants. There is, at the same time, a duty resting upon the passenger to act with prudence, and to use the means provided for his safe transportation, with reasonable circumspection and care, and if his negligent act contributes to bring about the injury of which he complains, he cannot recover. (4 *Penn.* 276).

That the defendant's steamboat, on which, it is alleged, the

infant plaintiff was a passenger with his mother, ran against and struck a barge tied near the defendant's wharf when approaching the wharf, is not controverted. And it is for you to determine from the evidence whether the injuries complained of were the result of the collision and, if so, whether the collision was due to negligence, on the part of the defendant company, in the movement and management of its steamboat at the time of the accident without the fault or negligence of the infant's mother.

Where there is conflict in the testimony, you should reconcile it if you can. If you cannot, you should give credit to and be governed by the testimony, which, in your judgment, is most worthy of belief, taking into consideration the intelligence, apparent truthfulness, bias and impartiality of the witnesses. The weight and value of the evidence so determined by you is to be your guide in reaching your verdict. And governed by this instruction, you should decide this case in whose favor there is a preponderance of the evidence. (4 *Penn.* 278).

If you find that the accident was not the result of the defendant's negligence, your verdict should be for the defendant. If you find that the accident was the result of the negligence of the defendant, your verdict should be for the plaintiff and for such a sum as will, in your judgment, reasonably compensate him for all his injuries, including his pain and suffering in the past and such as may come to him in the future from the accident, and also for such permanent injuries as may impair his ability to earn a living and perform the ordinary functions and duties of life. But in this matter you are to be governed not by mere speculation or conjecture, but by the evidence before you.

Verdict for plaintiff for $3,350.