SOUTH ATLANTIC STEAMSHIP COMPANY OF DELAWARE, a corporation of the State of Delaware, Defendant Below, Plaintiff in Error, *v.* FRANK MUNKACSY, Plaintiff Below, Defendant in Error.

(*July* 7, 1936.)

WOLCOTT, Ch., LAYTON, C. J., RICHARDS, RODNEY and SPEAKMAN, J. J., sitting.

*William S. Potter* (of Ward and Gray) and *Alexander R. Lawton, Jr.,* (of Lawton and Cunningham, of Savannah, Ga.) for plaintiff in error.

*C. Edward Duffy* and *Simone N. Gazan* (of New York City) for defendant in error.

Supreme Court, No. 1, October Term, 1935.

Writ of Error to the Superior Court for New Castle County, No. 119, January Term, 1934.

LAYTON, C. J., delivering the opinion of the Court:

The plaintiff in error excepted to the rulings of the trial judge sustaining objections, interposed at the trial, to certain questions and answers contained in the deposition of the boatswain, Rogers. Error is claimed in that the testimony elicited by the questions was of real probative value and pertinent to the issue of proximate cause, and also in that the defendant in error waived all right to object to the depositions at the trial.

With respect to the first ground of error, the argument of the plaintiff in error runs in this fashion: the question at issue was whether the boatswain was negligent in ordering Munkacsy to wash the ventilator in the weather conditions prevailing and in the circumstances existing. Therefore, it was necessary for the jury to determine whether the boatswain had any reason to anticipate that injury would follow from obedience to the order, for, unless there was some reason for him to anticipate injury as a proximate result, the order was not negligent and, consequently, no action could be based upon it.

With regard to the questions, "Have you ever seen anyone injured in the process of washing one of these ventilators?" and, "Was anyone hurt in doing that (washing) the other ventilators on the same deck on that day?" it will not be seriously contended, we think, that the negative answers given could have any probative value.

Whether the witness has ever seen anyone hurt in washing the ventilators at other times, or on the same day, did not tend to prove that his order, in the precise circumstances, was non-negligent. Many acts of negligence do not result in injury, and, as will hereafter be shown, negligence is not to be measured by the actor's own conception of the nature and quality of his acts or omissions.

The other questions were objectionable for two reasons. They called for the opinion of the witness. The general rule is that opinions of witnesses are irrelevant. Of necessity, there are exceptions to the rule. Upon matters which may be supposed to be outside the knowledge of persons of common education and experience, and with respect to which they are likely to be incapable of forming a correct judgment, witnesses shown to be learned, skilled or experienced in such matters, may, in a proper case, give their opinions.

Here, the witness was not qualified as an expert. The record discloses nothing as to his age, general experience at sea or particular experience as a boatswain. We understand a boatswain to be nothing more than a seaman who superintends the work of the crew. He is an intermediary who transmits orders from the master or mates to the crew. He is not required to be licensed. One who serves in such capacity does not thereby become an expert.

The practical administration of justice, however, frequently compels the admission of a class of evidence from non-experts, which generally is termed opinion evidence, but which, in fact, is describing observed facts in the only way in which they can be described intelligibly. The so called opinions of ordinary witnesses are received where it is impossible for the witness to detail all the pertinent facts in regard to a subject matter in such manner

as will enable persons, not eye-witnesses, to form an accurate judgment in regard to it. So, an ordinary witness may give an opinion or conclusion upon questions involving identity, handwriting, size, color, weight, value, time, distance, speed, visibility, audibility, physical appearances of fear, anger, excitement, intoxication, insanity, and in many other matters where it is not practicable to put the jury in possession of all the primary facts upon which the opinion is based. Where, however, the subject matter of investigation is such that anyone of common knowledge and experience may observe for himself, see the inferences which should be drawn from facts susceptible of proof in the ordinary way, and reach a reasonable conclusion thereupon, it may be decided by the jury without the assistance of any experience other than their own. Practical necessity in the basis for the exception to the rule, and much must be left to the sound discretion of the trial judge. See 2 *Jones, Evidence* (*1st Ed.*), *ch.* 12; 11 *R. C. L.* title *"Expert and Opinion Evidence."*

The other questions asked of the boatswain were such as called for his opinions and conclusions upon the character of the work, whether safe or dangerous. As may be supposed the authorities are in confusion. See note to *Hamann v. Milwaukee Bridge Co.*, 7 *Ann. Cas.* 463. There is, perhaps, a contrariety of opinion in this state. In *Punkowski v. New Castle Leather Co.*, 4 *Penn.* 544, 57 *A.* 559, an experienced workman was allowed to testify that it was dangerous for an unexperienced minor to work at a certain machine. But in *Seininski v. Wilmington Leather Co.*, 3 *Boyce* (26 *Del.*) 288, 83 *A.* 20, a workman of experience was not allowed to say whether a machine on the day of the accident was a dangerous machine. In *Martin v. Baltimore & Phila. R. Co.*, 2 *Marv.* 123, 42 *A.* 442, an ordinary witness was allowed to express his opinion that a railroad crossing

in certain circumstances, was unusually dangerous. But in *MacFeat's Adm'r v. Philadelphia, W. & B. R. Co.*, 5 *Penn.* 52, 62 *A.* 898, a non-expert witness was not allowed to say that a passage way or crossing was an unusually unsafe one for persons to use under certain conditions.

In *Duggan v. New Jersey & W. Ferry Co.*, 7 *Penn.* 318, 76 *A.* 636, an experienced master and pilot was not allowed to testify whether a steamer was properly manned and navigated in making a landing at a wharf, as the matter was not a proper subject for expert testimony. In *Price v. Charles Warner Co.*, 1 *Penn.* 462, 42 *A.* 699, a witness was not allowed to give his reason or opinion why a collision was bound to happen.

Although the decisions may not always be reconciled or reconcilable, the rule may be stated to be that opinions of witnesses, expert or non-expert, will not be received with respect to the dangerous character of appliances, work or situations when all the facts can be ascertained and made clear to the jury, or when the subject of inquiry is such as men of common education, intelligence and experience may comprehend and understand, for in such case, the jury may be trusted to form an opinion as intelligent and reliable as that of the witness, and there is no necessity for the admission of such testimony. But, where the inquiry involves facts or situations which it is not practicable to place clearly before the jury, or when upon all the facts, the jury may not be able to form an accurate judgment, the opinion evidence should be received.

The situation under consideration was not involved or intricate. It was possible to place before the jury all the material facts and circumstances surrounding the work ordered to be done, and there is no reason to suppose that the jury could not form an accurate opinion with respect

to the necessity of the work and the danger attendant upon its performance. Certainly it was within the discretion of the trial judge to exclude self-serving conclusions upon the ultimate fact to be decided by the jury.

■■ Moreover, the testimony, if received, would tend to determine the standard of care by reference to the judgment of the actor in the premises, the defendant's agent who gave the order.

The action was founded upon the negligence of the defendant's agent in giving an improvident order. That negligence was alleged to rest upon a command to the plaintiff below to perform work in a dangerous situation, it not being necessary to preserve the ship. The argument advanced is that the witness, he being the agent who gave the order, ought to have been allowed to say whether he had any reason to anticipate that injury would result from obedience to the order, so that the inference of negligence would be negatived. This is simply the contention that the order of the boatswain was not the proximate cause of the injury in that he had no reason to foresee injury.

The fallacy of this argument is that it allows the conduct of the boatswain, the actor in the premises, to be gauged by his own standard, and not by the standard of a reasonably prudent person in a like situation. Commanding one to do something is a positive act. It may amount to negligence. The standard to which one is held is found in the conduct of a reasonably prudent person. That standard is the jury's guide. As said by Chief Justice Tindal, in *Vaughan v. Menlove*, 3 *Bing. N. C.* 468, 32 *E. C. L.* 208,

"If the liability for negligence should be co-extensive with the judgment of each individual that liability would be as variable as the length of the foot of each individual."

■ The law adopts the external standard. Expecta-

tion of good results is not an absolute justification. Where one is charged with negligence, unless he can bring himself within some broadly defined exception to general rules, the law disregards his idiosyncrasies, and assumes that he has as much capacity to judge and foresee consequences as a man of ordinary prudence would have in the same situation. *Com. v. Pierce,* 138 *Mass.* 165, 52 *Am. Rep.* 264. See 1 *Street, Foundations Legal Liability,* 96.

"Suppose," says Justice Holmes in *"The Common Law,"* 107, "that a defendant were allowed to testify that, before acting, he considered carefully what would be the conduct of a prudent man under the circumstances, and, having formed the best judgment he could, acted accordingly. If the story was believed, it would be conclusive against the defendant's negligence judged by a moral standard which would take his personal characteristics into account. But supposing any such evidence to have got before the jury, it is very clear that the court would say, Gentlemen, the question is not whether the defendant thought his conduct was that of a prudent man, but whether you think it was."

But, the plaintiff in error insists that the defendant here waived all right to object, at the trial, to the questions submitted to the witness at the taking of his deposition, and his answers thereto, because, with full knowledge, he consented to have the deposition stand.

The taking of testimony by deposition is generally regulated by statute or rule of court. In this state the regulation is by court rules. *Rule* 69 of the Superior Court, in substance, provides that exceptions to testimony as irrelevant or improper, having been noted by the commissioner, may be heard at or before the hearing of the cause, as the court may direct, and that the omission to except to testimony shall be a waiver of objection.

This contention might well be answered by saying that, conceding technical error in declining the testimony offered despite the absence of objections appearing in the record of the deposition, we are unable to discover prejudicial error in refusing to admit testimony which clearly had no evidential value. See *Griffin v. Henderson,* 117 *Ga.* 382, 43 *S. E.* 712; *Cincinnati, N. O. & T. P. Ry. Co. v. Stonecipher,* 95 *Tenn.* 311, 32 *S. W.* 208.

 But a more fundamental question is involved. The rule was not designed to deprive the court of authority and discretion with respect to the admission or rejection of testimony offered by way of deposition. Parties, indeed, are not relieved from excepting to testimony when it is offered before the commissioner, as contemplated by the rule. Failure to except to testimony constitutes a waiver, and one failing to except is in no position to insist, as a matter of right, that the court shall hear the objection made for the first time at the trial. If the court should decline to hear the objection, the party would be estopped by his waiver from complaining. The court would have power, however, either on the suggestion of counsel, as in this case, or *ex moro motu* to withhold from the jury testimony which has no value as evidence.

 The general practice is to receive evidence when it is offered, unless it is objected to. But the trial judge is something more than a mere umpire sitting to see that the rules are obeyed. His is a real part in the administration of justice. Rules of practice and evidence are primarily designed to secure an orderly administration of the law. They serve their purpose so far as, and only so far as, they conduce to a fair trial. *State v. Crawford,* 96 *Minn.* 95, 104 *N. W.* 768, 822, 1 *L. R. A.* (*N. S.*) 839 (cited and quoted in 1 *Wigmore, Ev.* 207.) Evidence is a means

to an end not an end in itself. 1 *Wigmore, Ev.* 201. Hearsay testimony, or opinions and conclusions of witnesses, except in certain cases, are not evidence at all, and should not be allowed to be submitted to the jury. The trial judge is not obliged to wait for objections to improper testimony. He may exclude such testimony of his own motion, and, in the furtherance of justice it may become his duty so to do. 5 *Jones, Ev.,* § 893; 64 *C. J.* 231. The courts of this state have always assumed the right to safeguard the rights of litigants and to secure an orderly administration of justice by taking care that irrelevant, immaterial or incompetent testimony shall not be heard or considered by the jury, whether objection or motion to strike out was made or not. See *Duggan v. New Jersey & W. Ferry Co., supra.*

This authority should be exercised with caution, but when it clearly appears that testimony offered, whether by deposition or in the usual manner, is not evidence, it is within the discretion of the trial judge to exclude it even in the absence of objection. This practice conforms with reason. It confines the determination of causes to proper evidence having probative value. It prevents confusion of thought and of issues, and keeps from the records of trials, frequently too long, matters which have no bearing.

*O'Neill v. Cooles,* 3 *W. W. Harr.* (33 *Del.*) 541, 140 *A.* 648, is cited by the plaintiff in error in support of its contention. There, the court did say that it overruled an exception because it was not based upon any objection appearing in the record of the deposition, but it is not at all clear that the court meant to hold that the rule of court deprived it of all authority and discretion. The testimony was objected to because it was based upon X-ray photographs which were not then in evidence. The testimony would have been material if the photographs had been properly proved. The court refused to strike out the testi-

mony upon the promise of the plaintiff to produce and prove the photographs, saying that the question raised by the exceptions was within the discretion of the court.

It is sufficiently clear that the opinions and conclusions of the witness were properly excluded.

The plaintiff in error insists that a verdict should have been directed in its favor. It is urged that the testimony, considered in a light most favorable to the plaintiff below, shows that the situation was not one of danger, that there was only a moderate ground swell, that the sea was not rough, that the wind was moderate, that the work was routine in character and such as Munkacsy had done before in substantially similar circumstances. So, it is said, there was an entire failure to prove any facts which tended to show that the order to wash the ventilator was a negligent order. This argument concedes that an order was given, and it proceeds upon the hypothesis that there was nothing in the situation and circumstances then presented to show that injury was reasonably to be apprehended.

Our conception of the situation is not in accord. The plaintiff's testimony was that the vessel was well loaded having a free board of about six and one-half feet, and that there was a long ground swell giving to the vessel a roll sufficient to cause her to ship green sea through the scuppers and floodgates. To one working on the deck with a firm footing the situation was not dangerous, but Munkacsy was compelled to perform his work eleven feet above the deck, standing on narrow angle irons, and with nothing to hold to while doing the work. He had to maintain his footing as best he could, possibly by bracing his body against the bulwark, or by resting his idle hand upon the ventilator.

The circumstances disclosed by the record were such as to compel the court to submit to the jury the question

whether, in the situation presented, a reasonably prudent person should have foreseen harm as a result of the order.

 In applying the doctrine of proximate cause the foreseeability of injury by ordinary forecast is always to be considered. 1 *Thompson, Negligence,* § 50. The determination must be upon mixed considerations of logic, common sense, justice, policy and precedent. *Island Express v. Frederick,* 5 *W. W. Harr.* (35 *Del.*) 569, 171 *A.* 181. The question is usually for the jury as it is generally a mixed question of law and fact. *Stucker v. American Stores Corporation,* 5 *W. W. Harr.* (35 *Del.*) 594, 171 *A.* 230; *Island Express v. Frederick, supra;* 1 *Cooley, Torts* (3d *Ed.*) 111.

 The court correctly instructed the jury to determine whether, in fact, there was an order or command given to the plaintiff below to perform the work, and whether, in the circumstances, it was a negligent or improvident order.

A considerable part of the brief of the plaintiff in error is devoted to a discussion of principles which, as we think, are not in dispute.

The contract of the sailor always has been regarded as exceptional, involving, to an extent, the surrender of personal liberty during the term of the contract. The business of navigation could not be carried on without some guaranty, beyond the ordinary civil remedies on the contract, that the sailor will not abandon the vessel in some crisis. A seaman aboard ship is bound to perform such services as may be required of him in his employment. He cannot hold back and refuse prompt obedience because he may deem the appliances faulty or unsafe. Masters of ships possess large powers and they may lawfully compel obedience to orders. A seaman is never at liberty, like a landsman, to quit or make much objection to the circumstances

surrounding the work commanded. Disobedience is criminal, and seamen have the corresponding right to protection against needless exposure. They are not required to vindicate their right to security by refusal to work at the risk of being put in irons or going to jail. *Robertson v. Baldwin*, 165 *U. S.* 275, 17 *S. Ct.* 326, 41 *L. Ed.* 715; *Lafourche Packet Co. v. Henderson* (*C. C. A.*), 94 *F.* 871; *The Frank and Willie* (*D. C.*), 45 *F.* 494.

In actions founded on the statute in question, there seems to be no dissent from the proposition that a sailor at sea does not assume the risk of obvious dangers when carrying out the orders of one in authority not necessary for the preservation of ship or cargo, for the reason that he is obliged to obey the orders, and has not the freedom of action, the choice to obey or to quit, as have workmen on land. *Sanders v. South Atlantic S. S. Co.*, 49 *Ga. App.* 716, 176 *S. E.* 529; *The Mangore* (*D. C.*), 1 *F. Supp.* 138, 140; *Grimberg v. Admiral Oriental S. S. Line* (*D. C.*), 300 *F.* 619; *States Steamship Co. v. Berglann* (*C. C. A.*), 41 *F.*(2*d*) 456, 457. Seamen at sea, therefore, are not in the same category as railway employees, and they do not assume the risk involved in obeying an unnecessary order notwithstanding they may realize the danger involved.

We have already denied the contention of the plaintiff in error that there was no evidence to go to the jury of situation and circumstance that made the work dangerous to an experienced seaman, and there remains to be considered, whether, in fact, the plaintiff below was ordered to do the work, or whether he engaged upon it voluntarily. This necessitates a close examination and consideration of the testimony of the plaintiff below.

The plaintiff in error urges, and it will not be denied, that compulsion is the necessary element of the

exception to the doctrine of assumption of risk. It accordingly insists that an order, or command, or direction must be compulsory in the exact sense of the word. Admittedly, there is no want of the element of compulsion where the seaman realized the danger and protests, but yet is ordered to the work, as in *U. S. Shipping Board Emergency F. Corp. v. O'Shea*, 55 *App. D. C.* 300, 5 *F.* (2d) 123; *Masjulis v. U. S. Shipping Board Emergency F. Corp.* (*C. C. A.*), 31 *F.* (2d) 284; *Thompson v. Hermann*, 47 *Wis.* 602, 3 *N. W.* 579, 32 *Am. Rep.* 784; nor where the seaman was ordered to do something so palpably dangerous that it must be assumed that he would have avoided the work if he had dared, as in *Zinnel v. U. S. Shipping Board Emergency F. Corp.* (*C. C. A.*), 10 *F.* (2d) 47; *U. S. v. Boykin* (*C. C. A.*), 49 *F.* (2d) 762, 763; nor where the seaman has been ordered to do something in an unnecessarily dangerous way, as in *McGeorge v. Charles Nelson Co.*, 107 *Cal. App.* 148, 290 *P.* 75.

But it is urged that it is illogical and unreasonable to say that compulsion exists, as a matter of law, every time an order is given, for, *non constat*, the seaman may have willingly accepted the risk which he fully appreciated. It is sought to limit the meaning and effect of compulsion to the idea of a desire to avoid, but inability to avoid, performance because of force physical or moral, or reasonable apprehension of such force.

The plaintiff in error admits that it has been able to find but one case in which there is any discussion of the degree of compulsion involved in an order. In *Eldridge v. Atlas Steamship Co.*, 134 *N. Y.* 187, 32 *N. E.* 66, 69, Judge Haight, dissenting, said:

"The usual order was given to the plaintiff to operate the winch. He made no objection or complaint in reference thereto. He was in port, and could have left the vessel, and sought the protection of the consul, if the orders of the master were unlawful. Coercion must be established by the evidence. The bare fact that he was told to operate the winch does not establish an intent to unlawfully in-

terfere with him, and we cannot, from that fact alone, assume that he would have been unlawfully punished had he refused to obey the order."

It seems to us that this conception of an order indubitably would lead to uncertainty and confusion. Discipline would be impaired, danger increased, and seamen would be, in many cases, deprived of the benefits of the *Jones Act* for whose welfare it was enacted.

The plaintiff in error admits that perhaps it is not necessary that there be an actual protest on the sailor's part and a peremptory command to go on. Cases might arise, as it says, in which a sailor might consider that a protest would be a useless gesture, and in which he would testify that he went ahead unwillingly, although he knew that the work was dangerous. It admits that it has found no such cases in the reports, and we agree that such cases might arise. But it seems to us that metaphysical subtlety has little place in the determination of what is an order or command in its application to a sailor at sea, accustomed as he is by sense of discipline to instant obedience. An order or command implies an imperative direction to do or refrain from doing something. The sailor understands that all orders must be obeyed. Certainly it is not necessary that the language of the command be threatening, intimidating or violent. All that is necessary is that the will of the officer, or person in charge, be made known to the sailor.

Here we have the testimony of the plaintiff below that when the ventilator in question was reached in the progress of the work, he asked the boatswain, "How about this ventilator?" and that the reply was "Yes, we might as well get the ventilator, too." He further testified directly that he was told to go up the ventilator and wash it. In cross examination he said that he made no objection because he had to take orders, which he explained in his redirect examination, by saying that he made no objection because

he would be "brought up to the skipper refusing duty." A compulsory atmosphere was not wanting.

We are quite agreed that the facts and circumstances disclosed by the record required a submission of the case to the jury, and when the jury was instructed that the verdict should be for the plaintiff, if they found from the evidence that the plaintiff was ordered by the boatswain to wash the ventilator when the ship was rolling and pitching in such a manner as to cause such work to be perilous and fraught with danger, it not being necessary at that time to preserve the safety of the ship or cargo, and that the plaintiff was injured as a result of obeying that order, the defendant below received all that it was properly entitled to have.

There is no error. The judgment of the court below is sustained.