**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**September 15, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

BRIANNA LEIGH BELL,

　　Plaintiff - Appellee/Cross-
　　Appellant,

v.

SORIN CRM USA, INC., d/b/a Livanova
USA, Inc.,

　　Defendant - Appellant/
　　Cross-Appellee.

Nos. 20-1392 & 20-1396
(D.C. No. 1:17-CV-01807-RM-STV)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **McHUGH**, **MURPHY**, and **ROSSMAN**, Circuit Judges.
_____

Plaintiff Brianna Bell worked as an independent sales representative for

Defendant Sorin CRM from May 2014 through April 2017.  After Sorin declined to

renew her contract, she sued Sorin on various theories of liability.  A jury found in

Bell's favor on her claim of fraudulent inducement.  The jury found that she

sustained approximately $1.38 million in damages, and the district court entered

judgment in her favor in this amount.  In these cross-appeals, the parties primarily

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

contest the award of damages.  We conclude that Bell failed to prove damages with reasonable certainty, and therefore reverse and remand with instructions to issue judgment as a matter of law in Sorin's favor.

## I.  BACKGROUND

As a Sorin sales representative, Bell sold different types of cardiac-rhythm management ("CRM") devices, including pacemakers, defibrillators, and cardiac-resynchronization-therapy devices.  CRM devices are prescribed by physicians for implantation in patients, but the trial evidence established that hospitals are the actual purchasers of these devices.  Thus, hospital administrators are the individuals responsible for approving purchases of specific CRM devices.

Prior to working for Sorin, Bell worked as a sales representative for Medtronic, the largest CRM company in the United States.  She believed that many physicians from her business network would be willing to shift to Sorin devices with her, but she was aware she might be unable to complete these sales unless Sorin had a contractual relationship with the fourteen hospitals at which her network of physicians performed implantations.  Accordingly, she asked Sorin's directors if Sorin had contractual access to these hospitals.  She only signed her independent sales representative contract after she was reassured there would be no issues with this access or with her anticipated volume of sales.  Once she began working as a Sorin sales representative, however, she discovered that Sorin was not on contract with any of the fourteen hospitals in question, and many of the Sorin implants requested by her network of physicians were denied by hospital administrators.

2

During her three-year period as an independent Sorin sales representative, Bell sold a total of 135 devices and received a total of $418,667.73 in commissions, plus $88,300 in bonuses. Her commissions were calculated based on a contractual formula that took into account the year in which the sale occurred, the type of device sold, and the sale price. The devices sold by Bell ranged in price from less than $3,000 to more than $26,000, depending on the specific device at issue and on the pricing schedule Sorin had established for that particular purchasing hospital. Correspondingly, Bell's commissions for her 135 device sales also varied greatly, with her lowest-value sale earning her only $52.50, while her highest-value sale resulted in a $9,063.50 commission.

At trial, Bell presented testimony from three witnesses: herself, the Sorin area director with whom most of her pre-contract discussions occurred, and one of the physicians in her business network. This physician, Dr. John McKenzie, testified that Bell provided valuable technical support for the products she sold, so he intended to implant more Sorin devices after she became a Sorin sales representative. As a "rough estimate[]," he intended to move about 40% of his business, meaning "around 200 devices" annually, to Sorin. Appellant's App. at 1110. Because hospital administrators contested virtually every request to purchase a Sorin device, however, he implanted significantly fewer Sorin devices than anticipated. McKenzie did not further elaborate on the numbers or types of devices he intended to implant, nor did he provide any explanation as to why certain intended implantations were approved while others were denied.

3

In his closing argument to the jury, Bell's counsel suggested that the jury should calculate damages by dividing Bell's total commissions by the number of devices she sold to determine the "average commission per device," then multiplying this "average commission" by the number of devices Bell would have sold absent Sorin's fraudulent representations regarding its contractual access to the hospitals in Bell's sales territory. Appellant's App. at 855-56. The jury ultimately found Sorin liable for fraudulent inducement and awarded Bell $1,380,745.47 in damages. Sorin filed a motion for judgment as a matter of law, arguing both that Bell had failed to present sufficient evidence of fraud and that she had not established damages to a reasonable degree of certainty. The district court denied this motion, and Sorin appealed.

On appeal, Sorin again challenges both the evidence in support of the fraud claim and the evidence of damages. Bell filed a cross-appeal, in which she argues she should have been awarded additional damages for her lost opportunity to work as a Sorin sales representative for a fourth year. She concedes her cross-appeal will be moot if we agree with Sorin that she failed to present sufficient evidence of damages to sustain the jury's verdict.

## II. ANALYSIS

We review de novo the district court's denial of Sorin's motion for judgment as a matter of law, drawing all reasonable inferences in favor of Bell. *See Escue v. N. Okla. Coll.*, 450 F.3d 1146, 1156 (10th Cir. 2006). The parties agree that Delaware law governs the substantive issues in this diversity case, and they both assume that Sorin's damages argument raises a substantive issue governed by Delaware law. Accordingly, we will likewise evaluate this argument under Delaware law.

Like other jurisdictions, Delaware "does not permit a recovery of damages which is merely speculative or conjectural." *Henne v. Balick*, 146 A.2d 394, 396 (Del. 1958). "There must be some reasonable basis upon which a jury may estimate with a fair degree of certainty the probable loss which plaintiff will sustain in order to enable it to make an intelligent determination of the extent of this loss." *Id.* Based on the need to prove damages with a fair degree of certainty, Delaware, like other jurisdictions, generally requires expert testimony to prove economic and financial damages. *See, e.g.*, *PJ King Enters. v. Ruello*, 2008 WL 4120040, at *3 (Del. Super. Ct. July 1, 2008) ("Delaware law consistently holds that economic and financial damages require expert testimony."); *Villare v. Beebe Med. Ctr., Inc.*, 2014 WL 1095331, at *4 (Del. Super. Ct. Mar. 19, 2014) (granting summary judgment where plaintiff presented no expert testimony and "the proper measure of damages is lost profits," on which "expert testimony is necessary"), *aff'd*, 108 A.3d 1226 (Del. 2015); *cf. Conway v. Hercules Inc.*, 831 F. Supp. 354, 358 n.6 (D. Del. 1993) (stating that an expert may not be necessary in certain specific cases, such as when an

employee seeks front-pay damages based on his consistent former earnings and thus there are "no projections in earnings for which expert testimony [is] required" (quotation omitted)); *S. Atl. S. S. Co. of Del. v. Munkacsy*, 187 A. 600, 604 (Del. 1936) (holding that when any person of common knowledge can "observe for himself, see the inferences which should be drawn from [the] facts susceptible of proof in the ordinary way, and reach a reasonable conclusion thereupon," the jury may render its decision without the assistance of expert testimony).

Bell's trial evidence failed to provide a "reasonable basis" upon which the jury could determine her damages "with a fair degree of certainty." *Henne*, 146 A.2d at 396. She argues the jury could estimate damages by multiplying McKenzie's intended annual volume of 200 Sorin devices by an "average commission" rate of $3,101.24, which the jury could calculate by dividing her total commission amount by the number of device sales that occurred. Bell presented no evidence, however, that McKenzie's intended implantations would have included the same proportions of the same range of devices sold to the same hospitals as the actual implantations. Thus, she presented no evidence that her actual commissions were representative of the commissions she would have received if all of McKenzie's intended implantations had occurred. McKenzie did not specify the proportions of different devices included within his "rough estimate" of 200 anticipated Sorin devices per year, and thus provided no basis to compare his anticipated implantations to the actual implantations. Moreover, Bell presented no evidence explaining why certain device sales were approved while others were denied. The stipulated trial exhibits

6

indicate that, if anything, the cheaper devices were less likely to be approved than the more expensive ones, suggesting Bell's actual sales might well reflect a higher "average commission" than she would have received if all of the intended sales had been approved.  In short, there was simply no evidence to support an inference that Bell's actual sales were representative of the types of sales she would have made if Sorin's representations were true.  Accordingly, Bell's actual sales did not provide a reasonable basis by which to estimate the commissions she might have earned from her anticipated annual sales of 200 devices of unspecified types and prices at unspecified purchasing hospitals.  *Cf. AGF, Inc. v. Great Lakes Heat Treating Co.*, 555 N.E.2d 634, 640 (Ohio 1990) (affirming directed verdict on lost-profits damages where plaintiff provided no "specificity as to the price or quantity of parts" and instead only offered evidence regarding the "average price" of a part).  Moreover, even if damages could be reasonably projected from the limited evidence of Bell's actual and highly variable commissions during her three-year contract period, such a projection, in this case, would need to be presented through an expert's testimony, not through counsel's jury arguments.  *See PJ King Enters.,* 2008 WL 4120040, at *3; *Villare*, 2014 WL 1095331, at *4; *Conway*, 831 F. Supp. at 358 n.6; *Munkacsy*, 187 A. at 604.  We therefore conclude the district court erred in denying Sorin's motion for judgment as a matter of law on the damage award.

Because Bell failed to prove damages at trial, Sorin argues this court should reverse and remand for the entry of judgment in its favor rather than providing Bell with a second chance to make her case.  *See United States v. Griffith, Gornall &*

7

*Carman, Inc.*, 210 F.2d 11, 13–14 (10th Cir. 1954) (remanding "with instructions to modify the judgment," rather than for a new trial, where plaintiff's evidence of lost profits was too speculative to sustain the judgment). Bell does not dispute this argument, but only contends she presented sufficient evidence to prove damages. Bell has accordingly forfeited any arguments she might have made regarding the appropriateness of a new trial on the issue of damages. *Cf. Silor v. Romero*, 868 F.2d 1419, 1422–23 & n.4 (5th Cir. 1989) ("Silor's brief on appeal still maintains that his proof was sufficient to raise a jury question on lost business profits, and nowhere requests the opportunity to prove lost profits in a new trial. We are reluctant to offer this relief where it was not requested below or on appeal."). We therefore remand this case with instructions for the district court to enter judgment in Sorin's favor.

Finally, the parties agree that our disposition of this issue in Sorin's favor moots the other issues raised in both appeals. We accordingly do not address these additional arguments.

## III.  CONCLUSION

For the foregoing reasons, we **reverse** the judgment in Bell's favor and **remand** for the district court to enter a judgment consistent with this opinion. Bell's cross-appeal is **denied as moot.**

Entered for the Court

Michael R. Murphy
Circuit Judge

8